[PHILADELPHIA, APRIL 13TH, 1839.]

## NATHANS *against* MORRIS and Another.

### APPEAL.

1. A testator devised to trustees and their heirs three yearly ground-rents, viz. one of $240 per annum, one of $156 per annum and one of $66 per annum, in trust, as a fund for the payment of a certain mortgage debt of $5000 due by him ; and until the said debt should be required to be paid off, in further trust to receive the rents, as they accrued, and thereout, in the first instance, pay the interest on the said mortgage debt, and afterwards pay the surplus of the annual income to his grand-daughter M. L. N. during the term of her life, for her sole and separate use, without being liable to her husband's debts, and after her death in trust for all her children, and in default of children, to two other grand-daughters, M. E. H. and A. S. R.—*Provided*, that if the said mortgage debt should be required to be paid, the said trustees were authorised and directed to sell the said ground-rents or such and so many as should be sufficient to pay off the said mortgage debt, &c.; and if there should be any surplus after payment of the said debt, &c., then to pay such surplus into the hands of his grand-daughter, M. L. N., for her separate use and excluding her husband from all right or interest therein, and so that the same should not be subject to his debts, &c. : and in another *item* of his will the testator gave all the rest, residue, reversion and remainder of his estate, real, personal and mixed, not therein otherwise disposed of, to his said three grand-daughters, M. E. H., M. L. N. and A. S. R., their heirs, executors, &c. The trustees sold the two largest ground-rents, which produced together $7725 : *Held*, that M. L. N. was entitled to receive the whole amount of the surplus, after paying the mortgage debt and interest, to her separate and absolute use.

2. Commissions of trustees fixed at three per cent. on the purchase-money (amounting to $7725) of certain ground-rents sold by them in pursuance of the directions in a will.

THIS was an appeal from a decree of the Court of Common Pleas for the City and County of Philadelphia, made in a certain cause there depending in equity, wherein Margaret Lucretia Nathans, by her husband and next friend, Jacob Nathans, was complainant, and Joseph Morris and Andrew Geyer were defendants.

The bill of the complainant set forth, that by the last will and testament of her late grandfather, Peter Ozeas, dated December 26, 1823, the complainant became entitled to a certain interest in three several ground-rents, therein described, one of two hundred and forty dollars per annum, payable by Hugh Cooper, one of one hundred and fifty-six dollars per annum, payable by Samuel Williams, and another of sixty-six dollars, per annum ; as in and by the said

(Nathans *v.* Morris.)

will on record at Philadelphia, more fully and at large appears : that in and by the said will, Joseph Morris and Andrew Geyer were appointed trustees in regard to the said ground-rents, with power and authority to sell, in case a certain mortgage debt of five thousand dollars should be demanded, the said ground-rents, or such or so many of them as should be necessary or sufficient to pay off, and discharge the said mortgage debt of five thousand dollars, and the interest thereof, together with all such costs and charges as may have accrued thereon, and to make, execute, and deliver good and sufficient titles for the same to the purchaser or purchasers thereof, and his, her or their heirs and assigns forever, freed and discharged from all uses and trusts in the said will appointed, and by and with the proceeds of such sales, to pay off, and discharge the said mortgage debt, both principal and interest, together with the costs and charges, &c., and if there should then remain any surplus of the proceeds of such sales, after the payment of the said debt, interest, and costs, and charges aforesaid, then to pay over such surplus into the hands of his said granddaughter, Margaret Lucretia Nathans, to and for her sole and separate use and benefit, excluding her husband from all right and interest therein, so that the same, and every part thereof, should not be in his power or disposal, or subject to his control or intermeddling, or liable in any way or manner whatever to his debts, contracts, forfeitures and engagements, present or future; and the receipt of his said granddaughter, Margaret Lucretia Nathans, in her own name, and under her own hand alone for the said surplus of such proceeds of sales, if any there be, should, notwithstanding her coverture, be the only sufficient discharge to his said trustees for the same, any thing thereinbefore contained to the contrary notwithstanding. That according to the said will, the said mortgage debt having been previously demanded, the said trustees did, on the twenty-second day of December, A. D. 1836, sell two of the said ground-rents, viz.: the said rent of two hundred and forty dollars per annum, for the sum of four thousand eight hundred and twenty-five dollars, and the said rent of one hundred and fifty-six dollars per annum, for the sum of two thousand nine hundred dollars, making together the sum of seven thousand seven hundred and twenty-five dollars, at public sale ; and subsequently the purchasers thereof took the title thereof from the said trustees, and paid over to them, the said trustees, the purchase-money, deducting the said mortgage debt and interest, which they the said purchasers paid off themselves: that the said trustees became bound, according to their duty, to pay forthwith to the complainant, the said balance, so by them received, amounting to more than two thousand seven hundred dollars, in execution of the said will: but that they never did call upon the complainant to pay the same, nor had they offered or been willing to pay over the same, according to the said will, and their duty as trustees, &c., although the complainant had repeatedly

(Nathans *v.* Morris.)

demanded the same, and been in need of the funds, and made known her wants to the trustees, &c.

The answer of the trustees admitted, that the complainant's grand-father, Peter Ozeas, made his last will and testament, bearing date the twenty-sixth day of December, A. D. 1823 : that the respondents were appointed executors of the said will, and trustees for certain purposes declared therein : that after the death of said testator they proved the said will, and a codicil thereto annexed, and took upon themselves the burden of the execution thereof; for the provisions of which and the legal import thereof, the respondents referred the Court to the proof thereof, by the exhibition of a certified copy of said will, and submitted themselves to the judgment of the Court, as to the legal construction of the will. They admitted that the mort-gage debt of five thousand dollars referred to in the complainant's bill, was demanded of the respondents as executors of the said will, and required to be paid : and that the respondents did, according to the directions of the testator, on the twenty-second day of December, A. D. 1836, cause to be sold at public sale, two of the said ground-rents mentioned in the complainant's bill, to wit, the rent of two hundred and forty dollars per annum, and the rent of one hundred and fifty-six dollars per annum, the former for the price or sum of four thousand eight hundred and twenty-five dollars, and the latter for the sum of two thousand nine hundred dollars, making together the sum of seven thousand seven hundred and twenty-five dollars; and that they received the purchase-money and made conveyances of the said rents to the purchasers respectively thereof; and the respondents, with the moneys proceeding from the sales, paid and satisfied the said mortgage debt and the interest thereon, and the expenses of the sale. The respondents annexed an account of their transactions in their said trust under the said will as a part of this their answer. They submitted themselves to the judgment of this Court, and to their construction of the will, whether, upon the facts set forth, they, as such trustees, were bound to pay over to the com-plainant the money proceeding from the sale of the said ground-rents, or any part thereof, and if any, what part thereof; or whether on a true and sound construction of the will, it was the plain intent of the testator, apparent from the will, that the money, or so much thereof as this Court should think proper, should be secured to the sole and separate use of the complainant by the appointment of a trustee for that purpose, and the payment of the money to a trustee so appointed, &c.

A petition was afterwards presented by the complainant setting forth, that since the filing of her bill she had been informed, that certain persons, viz. Mary E. Hearttie and Horace Ramborger, a minor under the age of fourteen years, or some persons on their

(Nathans v. Morris.)

behalf, claimed an interest in the fund and the estate; and prayed that they might be added as parties.

The said Mary E. Hearttie and H. Ramborger filed an answer, claiming a certain interest in the fund and estate under the will of Peter Ozeas; and denied the right of the complainant, &c.

On the 27th of April, 1827, by an order made in this cause, the respondents, Morris and Geyer, were directed to pay into Court the sum of $2217 63 admitted by the answer to be in their hands; which sum was accordingly paid in.

On the 8th of December, 1837, the following decree was made:

" It is ordered and decreed by the Court, that the item of three hundred and eighty-six dollars twenty-five cents, charged in the account filed by the said Joseph Morris and Andrew Geyer as commissions, in receiving seven thousand seven hundred and twenty-five dollars, ($7725,) be disallowed and in lieu thereof the sum of one hundred and eighty-three dollars thirty-seven cents, ($183 37) be allowed; being three per cent. on six thousand one hundred and twelve dollars and fifty, ($6112 50), that being the amount which the ground-rents for two hundred and forty dollars, ($240,) and sixty-six dollars, ($66), would have produced; thus making the balance in the hands of the said trustees at the time of filing said account, two thousand four hundred and twenty dollars fifty-one cents, ($2420 51); and it appearing to the said Court that as to the sum of eight hundred and forty-six dollars sixty-three cents, part of the said balance, the trust has expired, it is ordered and decreed that the said sum of eight hundred and forty-six dollars sixty-three cents be paid to the said Margaret L. Nathans for her sole and separate use, and that the balance of one thousand five hundred and seventy-three dollars and eight-eight cents, be forthwith invested by the trustees under the direction of this Court in one of the securities provided by the law, for the purposes mentioned and expressed in the will of P. Ozeas."

From this decree an appeal was taken by each party.

The following extract from the will of Peter Ozeas, is necessary to the understanding of the points in debate.

" *Item*—I give and devise unto my friends Joseph Morris of the said city, house-carpenter, and Andrew Geyer of the said city, esquire, and their heirs, all those my two yearly rent charges or ground rents, issuing out of lots of ground, situate on the north side of Mulberry street, between the said Eighth and Ninth streets, in the said city, one of two hundred and forty dollars per annum, payable by Hugh Cooper; and the other of one hundred and fifty-six

dollars per annum, payable by Samuel Williams; and also all that
my other yearly rent charge or ground-rent of sixty-six dollars per
annum, issuing out of a lot of ground on Cherry street, between the
said Eighth and Ninth streets, in the said city, and all the ways,
means and remedies for the recovery thereof, respectively, to hold
to them the said Joseph Morris and Andrew Geyer, and their heirs
and assigns, to their proper use forever—in trust nevertheless as a
fund for the payment of a certain mortgage debt or principal sum of
five thousand dollars by me owing, and payable with interest unto
Stephen Anderson; and upon the further trust, that until the said
principal debt shall be required to be paid off, they my said trustees
shall receive the said three yearly rent charges or ground-rents, as
they shall respectively accrue and grow due; and thereout in the
first instance pay and discharge the interest of the said mortgage
debt of five thousand dollars, as the same shall from time to time
accrue and grow due; and shall afterwards pay over the surplus of
the annual income of the said three several ground-rents into the
hands of my grand-daughter Margaret Lucretia Nathans, from time
to time during all the term of her natural life, to and for her sole and
separate use and benefit, without being liable in any way or man-
ner whatever to her husband's debts, contracts, forfeitures or engage-
ments, present or future; and the receipts of my said grand-daughter
Margaret Lucretia Nathans, in her own name and under her own
separate hand alone, for the said surplus of the said annual income
of the said three several ground-rents shall, notwithstanding her
coverture, be the only sufficient discharges to my said trustees for
the same.    And from and immediately after the decease of my said
grand-daughter, Margaret Lucretia Nathans, then as for and con-
cerning the said three several yearly rent charges or ground-rents
last before mentioned, in trust, to the use and behoof of all and every
the children of my said grand-daughter Margaret Lucretia Nathans,
born and to be born, that shall be living at her death, and the lawful
issue of such of them as shall be then dead leaving issue, and their
respective heirs and assigns forever, equally to be divided amongst
them, part and share alike, as tenants in common: so always how-
ever that such issue take amongst them in fee simple and in equal
parts as tenants in common, such part and share only, as his, her or
their deceased parent would have taken if then living, and no more.
And if my said grand-daughter, Margaret Lucretia Nathans, shall
die without leaving a child or children, or a grandchild or grand-
children, her surviving, then I give and devise all the aforesaid three
several yearly rent charges or ground-rents, last before mentioned,
unto her two sisters, my said grand-daughters, Mary Eckhart
Hearttie and Anna Susannah Ramberger, and their several and
respective heirs and assigns forever, equally to be divided between
them, part and share alike, as tenants in common. *Provided always*,
and upon this further trust and special confidence nevertheless, that

if the aforesaid mortgage, debt, or principal sum of five thousand dollars shall, at any time be demanded or required, from my executors or estate, then and in that case, my trustees, the said Joseph Morris and Andrew Geyer, and the survivor of them, and the heirs of such survivor shall, and I do hereby order and direct, authorise and empower them, and the survivor of them, and the heirs of such survivor forthwith, after such demand or requisition, to bargain and sell, and absolutely dispose of the said three several yearly rent-charges or ground-rents herein last before mentioned, or such and so many of them, as shall be sufficient to pay off and discharge the said mortgage debt of five thousand dollars and the interest thereof, together with all such costs and charges as may have accrued thereon, and to make, execute 'and deliver, good and sufficient titles for the same, to the purchaser or purchasers thereof, and his, her or their heirs and assigns forever, freed and discharged from the uses and trusts aforesaid; and by and with the proceeds of such sales, to pay off and discharge the said mortgage debt, both principal and interest, together with the costs and charges thence arising; any thing hereinbefore contained to the contrary thereof in anywise notwithstanding. And if there should then remain any surplus of the said proceeds of sales, after payment of the said debt and interest, and costs and charges aforesaid, then to pay over such surplus into the hands of my said grand-daughter Margaret Lucretia Nathans, to and for her sole and separate use and benefit, excluding her husband from all right and interest therein, so that the same or any part thereof shall not be in his power or disposal, or subject to his control or intermeddling, or liable in any way or manner whatever, to his debts, contracts, forfeitures or engagements, present or future; and the receipt of my said grand-daughter Margaret Lucretia Nathans, in her own name and under her own hand alone, for the said surplus of such proceeds of sales, if any there be, shall, notwithstanding her coverture, be the only sufficient discharge to my said trustees for the same, any thing hereinbefore contained to the contrary thereof in anywise notwithstanding.

Item—As for and concerning all the rest, residue, reversion and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, which I have not hereinbefore otherwise disposed of, I do hereby give, devise and bequeath, the same and every part and parcel thereof unto my said three grandchildren, Mary Eckhart Hearttie, Margaret Lucretia Nathans and Anna Susannah Ramberger, their several and respective heirs, executors, administrators and assigns forever, equally to be divided amongst them, part and share alike, as tenants in common."

Mr. *Hirst*, and Mr. *J. R. Ingersoll*, for Mrs. Nathans.

Mr. *F. W. Hubbell*, for the defendants, Geyer and Morris.

(Nathans *v.* Morris.)

Mr. *Keemlé*, for the defendants, Hearttie and Ramberger.

The opinion of the Court was delivered by

KENNEDY, J.—All the parties concerned seem to have been dissatisfied with the decree of the Court below, and each, therefore, has taken an appeal. The trustees, Joseph Morris and Andrew Geyer, think themselves aggrieved by it, because the claim made by them for compensation for their services in the execution of the trust was partly disallowed. From all that has been shown in regard to this, we are not enabled to say that the sum allowed to the trustees by the decree of the Court, is not a reasonable compensation for their services rendered, and the expense incurred by them, in the execution of that part of the trust, on account of which it was particularly allowed. It has, however, been objected by the other parties, that the sum allowed to the trustees for their trouble, is too great; but nothing has been adduced to satisfy us, that this objection is well founded. We therefore affirm the decree of the Court below, so far as regards the allowance made thereby to the trustees, in order that they might be recompensed for the attention and services given by them in the execution of that part of their trust, which has given rise to the present controversy.

Mary E. Hearttie and Horace Ramberger, a minor, and only child and representative of Anna Susanna Ramberger, named in the will of the testator, and now deceased, beside objecting to the amount of the compensation allowed to the trustees, object also to the decree of the Court below, because the Court did not direct the whole of the surplus money arising from the sale of the two ground-rents, upon which the mortgage rested, after satisfying the amount of the debt therein mentioned with the interest, charges and costs accrued thereon, to be invested in trust for the like uses and subject to the like limitations, as are declared and directed by the testator, in his will in regard to the ground-rents themselves, as long as there should be no occasion to sell them; whereas the complainant, Margaret Lucretia Nathans, beside excepting to the amount of the compensation allowed to the trustees, excepts to the decree of the Court, on the ground that the whole of the said surplus, was not decreed and given by the Court to her, for her sole and separate use absolutely, in conformity to that clause in the will of the testator, which directs in these words, " And if there should then remain any *surplus* of the said proceeds of sales, after payment of the said debt and interest, and costs and charges aforesaid, then to pay over such surplus into the hands of my said grand-daughter, Margaret Lucretia Nathans, (the complainant) to and for her sole and separate use and benefit, excluding her husband from all right and interest therein, so that the same or any part thereof, shall not be in his power or disposal, or subject to his control or intermeddling, or liable in any

(Nathans *v.* Morris.)

way or manner whatever, to his debts, contracts, forfeitures, or engagements, present or future, and the receipt of my said granddaughter, Margaret Lucretia Nathans, in her own name and under her own hand alone, for the said surplus of such proceeds of sales, if any there be, shall, notwithstanding her coverture, be the only sufficient discharge to my said trustees for the same, any thing hereinbefore contained to the contrary thereof in anywise notwithstanding." This clause of the will, it must be admitted, is expressed with precision and clearness, free certainly from all ambiguity; and from its peculiar import. in excluding the husband of Mrs. Nathans, from receiving such surplus as is therein mentioned, and preventing it from being made *liable for the payment of his debts,* without the consent of Mrs. Nathans, it would not be unreasonable to infer thence, that the testator must have supposed it might possibly be of considerable value, on account of its large amount, and therefore might be of great benefit to Mrs. Nathans, otherwise he need not have cared for her husband's receiving it. And being posterior in the will to the other part thereof, relied on by the defendants Hearttie and Ramberger, it is totally repugnant to it, so that the two parts cannot stand together, and it must prevail according to the rule, *cum duo inter se pugnantia reperiuntur, in testamento ultimum ratum est. Co. Lit.* 112, b. 2 *Bl. Com.* 381. That they are wholly irreconcilable with each other, and cannot stand together, is perfectly manifest, if it were intended that both should take effect at the same time, which was certainly not the case. It is not like the case where the *same* thing is devised or bequeathed in the same will to two different persons, about which there was great difficulty and diversity of opinion, and in which the rule, just stated, has been got over by giving it to them either as joint tenants, or tenants in common. 3 *Atk.* 493. *Co. Litt.* 112, b. *Hargrave,* note 1. Here the *surplus* which is given by the latter part of the will, to Mrs. Nathans is not the *identical* thing that is disposed of by the former or prior part of the will. It was not in being at the time of making the will, nor at the time of the death of the testator. It was also uncertain when, if ever, it should come into being; this was the view which the testator had of it; and accordingly he intended by the latter part of his will to provide for the disposition of it, whenever it should arise, if at all, or come into existence. The prior part of the will does not touch it, and was not intended by the testator to affect it in any way whatever; the prior operates upon the ground-rents, a different thing altogether, and directs the uses to which they shall be applied, so long as they shall remain in the hands of the trustees unsold; but then this appropriation of the ground-rents, from its very nature was to terminate upon the sale being made of them by the trustees, as therein directed; upon which event, and not before, the *surplus,* for the disposition whereof the latter part provides, might arise and come into being. Thus seeing that those two parts of the will are applicable to distinct

and different objects, and the operation of the latter intended only to commence upon the determination of the prior, it is perfectly obvious that they are consistent with each other, and may stand together.

But it is said, that the latter part being only indicative of the particular intent of the testator, ought not to be permitted to operate so as to defeat the general intent, which, it is alleged, is manifested throughout the will. This rule, although said to have a governing influence in the construction of wills, can have no application here, for the intention displayed in that part of the will, under which the defendants Hearttie and Ramberger claim, does not accord seemingly more with any general intention that may be manifested by the testator in his will, than the intention disclosed in the latter clause does, under which Mrs. Nathans claims. Nor does it appear that either of those parts can be considered as running counter to any general intention that can be collected from the whole tenor of the will: they are not only consistent with each other, but would appear to be so with the general scope and design of the will.

It is also said, that the testator could not have intended that so large a surplus, as there is here, should be given to Mrs. Nathans absolutely, for her sole and separate use, as directed in the latter clause of the will; that, at most, he could only have intended some small inconsiderable sum of money; supposing that in no event, upon a sale of the ground-rents, for the purpose of paying off the mortgage, it could be more. This, if not fanciful, is at best merely conjectural; and would therefore be a very unsafe basis to found a construction upon. If such had been his intention, nothing could have been more easy, than to have said so, and to have put an express limit upon it; but he has not done it, neither has he used any words from which it is possible to draw the conclusion that such was his intention. Indeed it may well be doubted, as has been already suggested, whether he would have considered a surplus, of a trifling amount, of sufficient importance to make it either necessary or expedient to give it in such a manner to Mrs. Nathans, as to exclude her husband from the right of receiving it. It may be, that rather than pronounce a will, or a devise, or bequest in it, void for uncertainty, what seemed from the will itself, to have been the probable intention of the testator, would be deemed sufficient to prevent it from being declared a nullity; but I apprehend that fancy or bare conjecture, ought never to be permitted to supply the want of evidence of intention; and certainly never can be considered sufficient to set aside a clear and positive provision in a will, expressed in terms of definite and precise meaning, and therefore susceptible of but one construction. The whole of the surplus here then is given to Mrs. Nathans, for her sole and separate use absolutely, without any qualification or limitation whatever, either as to its amount, duration, or any thing else attending it, yet the testator was certainly

(Nathans v. Morris.)

aware that the surplus might happen to be either small or something considerable, just as the ground-rents should happen to bring high or low prices; for in directing the sale of them, he has ordered that they should all be sold, or such and so many of them as should be sufficient to pay off the mortgage debt, with the interest, charges and costs accrued thereon; so that it might be necessary, after having sold one of the ground-rents, to sell the second or the third, in order to make up a very small deficiency, which would be likely to produce a large surplus. But it has been objected to Mrs. Nathans claiming the whole of the surplus, that the trustees improperly increased the amount of it beyond what it would and ought to have been, by selling the two largest ground-rents, instead of the largest and the least. It is a sufficient answer to this, however, to say that it has not been shown, that a sale of the largest and the least ground-rents would have yielded a sum of money sufficient to have satisfied the mortgage debt with the interest, charges and costs accrued thereon; and if it would not, it is evident that the sale of the remaining ground-rent, which in that event would have become necessary, would still have increased the surplus in amount, above what it is now, and possibly have subjected the trustees to some blame. The Court below seem to have founded their decree upon the assumption of the fact, that the least ground-rent, if it had been offered for sale by the trustees, would have brought a price in proportion to its nominal amount, equal to those produced by the sales of the two largest, which with the price of the largest ground-rent, would have been sufficient to have satisfied the mortgage, beside all charges, and left a surplus of eight hundred and forty-six dollars and sixty-three cents. The Court, accordingly, conceiving that this sum would have been the amount of the surplus, had the trustees pursued a proper course, and sold, as the Court thought they ought to have done, the largest and the least of the three ground-rents, instead of the two largest, decreed that it should be paid to Mrs. Nathans, for her sole and separate use. That the least ground-rent could have been sold equally as well as the others, had it been offered, seems to have been matter of conjecture, without any evidence being adduced to show what it would have brought at a public sale. In the absence then of all proof on this head, we must presume that the trustees acted fairly and discreetly, and sold such of the ground-rents only as were proper, in order to raise the requisite sum of money, and having done this, there remains a surplus, after paying off the mortgage and all charges, of two thousand four hundred and twenty dollars and fifty-one cents. This sum it would then seem, from the plain unequivocal terms of the will, the testator intended should be given to Mrs. Nathans, for her sole and separate use absolutely. It is therefore ordered and decreed by this Court, that the said sum of two thousand four hundred and twenty dollars and

fifty-one cents of the money which is in court, be paid to the said Margaret Lucretia Nathans, for her sole and separate use ; and that the decree of the Court below be reversed, excepting as to the allowance decreed to the trustees for their trouble and services, which part of it is hereby affirmed.

Decree accordingly.