## Kauffman's Appeal.

|112|645|
|157|609|

112        645
e 22 SC   599

A decedent died seised of a parcel of real estate, upon which a judgment and a subsequent mortgage, neither of which were for purchase money, were liens. His widow elected to retain out of his estate, real estate to the value of $300, under the Act of April 14th, 1851, P. L., 612. This parcel of real estate was appraised at $275, the appraisement was confirmed by the Orphans' Court, and the real estate set apart to her. It was sold at sheriff's sale on a *levari facias*, issued on a judgment subsequently obtained on a *scire facias* on the said mortgage, for a sum less than the judgment on which it was sold. On distribution of this fund,

*Held*, *(a)* That the confirmation of the appraisement transferred said real estate to the widow divested of the lien, not only of the general debts, but from the lien of all judgments against the decedent, whether entered before or after the mortgage.

*(b)* That the lien of the mortgage remained against said real estate, since from its nature the Act of 1851 was not applicable to it.

*(c)* That the fund must be distributed to the mortgagee.

*(d)* That the costs of the audit must be imposed on the claimants, the judgment creditor and the widow, as their claims were unwarranted and unfounded.

April 26th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Northumber-land county :* Of July Term, 1885, No. 77.

Appeal of John R. Kauffman from the decree of said court distributing the fund arising from. the sheriff's sale of the real estate of Charles J. Conrad, deceased.

The following are the facts in the case as found by the. Auditor, W. I. Greenough, Esq.

The money in court is the sum of $91.40, and is. the purchase money, after deducting costs, of a piece. of land sold by the sheriff, under and by virtue of said writ of *levari facias*. Charles J. Conrad became the owner in fee of this land, and died on the 8th day of October, 1877, seised of it. He left to

survive him a widow, Hannah Conrad, and several children. H. M. Conrad was duly appointed administrator of the said decedent on the 20th of October, 1877.

The liens of record on the land at the death of C. J. Conrad were, in their order of priority, as follows: first, a judgment in favor of John R. Kauffman for $162.18, entered May 27th, 1874, and revived May 8th, 1882, for $265.03; second, a mortgage, C. J. Conrad to the Susquehanna Building and Loan Association of Sunbury, dated 20th day of August, 1876, recorded on the 26th of August, 1876.

After the death of C. J. Conrad this mortgage was proceeded upon; by *scire facias*, to judgment, execution and sale, as follows: *Scire facias* issued September 28th, 1881; judgment on the same, May 20th, 1882, for $477.16; *levari facias* issued July 3d, 1882.

The premises described in the above mortgage and *levari facias* were sold by the sheriff under the said writ on 3d of August, 1882, to the said plaintiff, the Susquehanna Building and Loan Association, for $160. The sheriff applied, of this sum, $68.60 to costs, and paid the balance, the sum of $91.40, into court. This is the fund now for distribution.

Hannah Conrad, the widow of C. J. Conrad, gave due and timely notice to H. M. Conrad, the administrator, of her claim of three hundred dollars out of the estate, and of her election to take land of that value, and of her request and desire that land to that amount be appraised and set apart to her. Pursuant to this notice appraisers were duly and properly appointed. On the 11th of February, 1879, the appraisers made their appraisement, and set apart the said lands to the widow, Hannah Conrad. The piece and parcel of land embraced in and bound by the mortgage and the judgments, was appraised at the sum of two hundred and seventy-five dollars. To this appraisement, and setting apart to the widow, of the lands, exceptions were filed by John R. Kauffman, and by the Building and Loan Association, on the ground that the lands were valued at too low a valuation, and that the widow was not entitled to the exemption in preference to the mortgagee. The court refused to disturb the appraisement for want of sufficient proof, and because the Supreme Court had held in Norpel's Appeal, 10 Norris, 334, that a widow is not entitled to her exemptions under the 5th section of the Act of 14th April, 1851, out of the proceeds of the real estate of her deceased husband, in preference to his mortgage thereof, and made the following decree, filed 11th April, 1881: "The exceptions are dismissed, to be without prejudice to the Susquehanna Building and Loan Association; and the appraisement is confirmed, subject to the rights or claims of the

said Association, if any right, claim, or claims it has, under and by virtue of its mortgage, against Charles J. Conrad, recorded at Sunbury, in the office for recording deeds, in and for Northumberland county, in Mortgage Book, No. 15, page 605, &c." There was no appeal from this decree.

The money in court is claimed by the widow, Hannah Conrad, who is the terre tenant defendant in the *scire facias sur* mortgage, issued by the Building and Loan Association, and in the judgment recorded thereon. It is also claimed by H. M. Conrad, Administrator of C. J. Conrad, and by John R. Kauffman and H. B. Masser, under their respective judgments, and by The Susquehanna Building and Loan Association under their mortgage.

The Auditor distributed the fund to the mortgagee, and directed that costs of the audit be paid by John R. Kauffman and Hannah Conrad.

Exceptions were filed to this distribution by John R. Kauffman. The exceptions were dismissed and the report of the auditor was confirmed by the court, ROCKEFELLER, P. J.

John R. Kauffman thereupon took this appeal, assigning for error the confirmation of the Auditor's report.

*William A. Sober* (*J. Nevin Hill* and *George Hill* with him), for the appellant.

Neither by the Act of 1851, nor by any rule of law since established by judicial decision or by legislative enactment, has the order of lien been changed, as between the creditors themselves. Whoever is first in rank at the death of the owner of the fee, must continue such on distribution of the fund raised out of the land, on which two or more persons shall be common lien creditors, whether they be such by judgment or by mortgage, unless one suffers his lien to expire afterwards by limitation, before the conversion by sale or otherwise. Who shall exercise the right or power to repudiate this vested right of a lien creditor?

On distribution, the fund is only substituted for the thing producing it, which was the subject of lien; and the rights of lien creditors must remain as created by entry, unless subsequently lost by limitation, or other competent way, resulting from the act or negligence of the party to be affected. No such state of things is shown in this case, against the appellant or his lien by judgment. If the widow's estate was superior to his judgment, it must also have been paramount to the subsequent mortgage; for being subsequent to the lien of this judgment, under the Act of Assembly, it was no more than a mere lien itself. It was not in the nature of a fixed lien, or of a conveyance of the title; and hence was dis-

charged from the land, if not by the proceedings in the Orphans' Court, setting apart and adjudging the land to his widow, then, indeed, by the sale on this mortgage ; and then, both the judgment and the mortgage came to the fund, in the order of their entry.   By necessary legal consequence, under the facts of this case, the appellant was entitled to the fund, or so much thereof as was necessary to pay his judgment; it being first in order of lien upon the fund, because it was first upon the title.

In support of their ruling, the auditor and the court below, cite and rely chiefly on the decision of this court in Nerpel's Appeal, 10 Norris, 334.   But in that case, no question of priority of lien was raised, nor was the contest there between lien-creditors.   It was only whether, under the Act of 1851, the widow of a decedent could take and hold land subject to a mortgage by the deceased owner, which was . " prior to all other liens, except other mortgages, ground-rents and purchase money due the Commonwealth," as against the mortgagee or the sheriff's vendee upon such prior mortgage.   In that case, the mortgagee was held protected by the Act of the 6th of April, 1830, P. L., 293.   But the provisions of that Act do not come to the protection of the mortgagee in this case, as they did in that, for the very good and manifest reason that the mortgage here is preceded by a lien of a judgment; and this casts it without both the letter and spirit, as well of that Act as of the decision of this court, in Nerpel's Appeal, *supra.*   A judicial proceeding, which will discharge the lien of the prior judgment, must also have the effect of discharging the lien of the subsequent mortgage ; and can it be doubted that, the proceedings in the Orphans' Court, under the widow's election to take of the land of her deceased husband, to the value of $300, under the provisions of the Act of 1851, are of a judicial character?   Is an Orphans' Court sale, or a sale by the sheriff, any more so ?

*C. M. Clement* for appellee.

The judgment of John R. Kauffman was the first lien at the time of the death of Charles J. Conrad, but, as is stated, by the Auditor, the *status* of the liens was then changed by the provisions of the Act of April 14th, 1851. If the court below erred, as seems to be claimed by counsel for appellant, in awarding the fund to the mortgagee, in no event could it have been awarded to the appellant.   The judgment was not given for purchase money, and the formal adjudication of the land to the widow, divested its lien as to all of the real estate appraised, no matter what other rights were preserved.

Citations upon this point are hardly necessary, but we refer

to Runyon's Appeal, 3 Casey, 121; Deitweiler's Appeal, 8 Wr., 245, and cases cited.

The lien of the judgment upon the land bound by the mortgage having been determined by operation of law immediately upon the confirmation of the appraisement, the question of priority could not arise before the Auditor, nor had the appellant any right to participate in the distribution: Clarke v. Stanley, 10 Barr., 472.

Charge of WOODWARD, P. J., affirmed by this court: "The time of the sheriff's sale is the period to test the question of priority, then it is that the rights of his creditors come to be asserted:" Rudy's Appeal, 13 Norris, 338.

"Where land is sold at sheriff's sale only those creditors whose claims were liens on the land at the time of the sale can participate in the distribution of the proceeds."

The widow of a decedent takes the land under the statute of 14th April, 1851, subject to any mortgage given by the decedent in his lifetime: Bryar v. Campbell, 4 East. Rep., 336; Nerpel's Appeal, 10 Norris, 334.

Mr. Justice CLARK delivered the opinion of the court May 10th, 1886.

Under the fifth section of the Act of 14th April, 1851, a widow is entitled to retain, out of the estate of her deceased husband either real or personal property to the value of $300. The confirmation of the appraisement is an adjudication which vests the title to the property taken, in her: Runyan's Appeal, 27 Pa. St., 121. When the adjudication is of real estate she takes the title of her husband absolutely, and may convey it by deed: Sipes v. Mann, 39 Id., 41. She is entitled to this exemption as against the judgment as well as the general creditors, and will be preferred even as to a judgment creditor in whose favor the decedent had waived the benefit of the exemption law: Spencer's Appeal, 27 Pa. St., 218. The only limitation to her right as to real estate, expressed in the statute, is that her right "shall not affect or impair any liens for the purchase money of such real estate."

A similar restriction is the only one found in the Debtors' Exemption Act of 9th April, 1849. In McAuley's Appeal, 11 Casey, 209, however, it was held that the Act of 1849 was inapplicable to mortgages, whether given for purchase money of real estate or not; that such debts were not within the purview of that statute. In Gangwere's Appeal, 12 Casey, 466, reasons were assigned, at length, for this interpretation of the statute, and the rule has since been followed in a large number of cases.

In Nerpel's Appeal, 10 Norris, 334, the same interpretation

was given to the Act of 14th April, 1851, and it was there held that a widow was not entitled to her exemption, as secured by the fifth section of that Act, in preference to her deceased husband's mortgagee, out of the proceeds of a sheriff's sale of the mortgaged premises. This construction was necessarily inferred from the nature of the mortgage contract. " The mortgage by the decedent," said this court in the case last cited, " was something more than a mere lien. For all purposes of security to the mortgagee it was a conveyance of the land. He could have recovered in ejectment the possession of the premises, and held until his principal, with interest, was repaid. Had he resorted to this remedy, and the mortgagor had then died, it is not pretended that his widow would have any right to the exemption. The proceeding under the Act of Assembly, by *scire facias*, is but a substitute for a foreclosure in equity, and the sale it provides for does not alter the case. It ought not to be that the election of one remedy, and not the other, should make a difference in the right of the mortgagee."

So, also, in City of Allentown's Appeal (1885), not yet reported, we said: " The reason why such mortgage shall not be impaired by the statutory exemption in favor of the widow or children is said to arise from the contract by which the debtor pledges the land to his creditors as a security for the debt. And though mortgages are commonly spoken of as mere securities for payment of money, they are such because they are formal pledges of the land. The mortgagee, upon default in performance by the mortgagor of the stipulations in the deed, may, by ejectment, obtain possession of the premises, and the exemption laws do not apply to the impairing of such a security: Gangwere's Appeal, 36 Pa. St., 466; Nerpel's Appeal, 91 Id., 334."

The confirmation of the appraisement and designation of the widow's exemption was therefore an adjudication *in rem* in her favor; thereafter the land constituted no part of the decedent's estate; the title was thereby transferred to the widow absolutely; it passed to her liberated from the lien, not only of the general debts, but from the lien of all judgments of the decedent, whether entered before or after the mortgage. This restriction on the remedies of the general and judgment creditors is plainly expressed in the statute, and is well understood in practice.

There was, therefore, after the date of the adjudication in the Orphan's Court, one lien only remaining against this land, and that lien was the mortgage, to which, from its nature, the Act of 1851, was not applicable; the land was, by force of the statute, absolved or exonerated from all other liens.

[Kauffman's Appeal.]

The distribution, therefore, concerned only the mortgage creditor and the widow. Kauffman had no standing whatever before the Auditor, and his claim was rightly refused. The title of the widow was, not only by the express terms of the decree, but by law, subject to the lien of the mortgage, and as the fund for distribution was inadequate for the payment of that lien, the widow was clearly not entitled to any share in it. The distribution made by the Auditor and confirmed by the court was, therefore, in strict accordance with the previous rulings of this court.

We think the costs were rightly imposed upon the appellants; their respective claims upon the fund were utterly unwarranted and unfounded, and it is unjust that the small fund for distribution should be frittered away in a useless litigation for which they were alone responsible.

The decree of the Common Pleas is affirmed.