## Finney's Appeal.

1. When a widow claims to have set apart to her $300 out of her deceased husband's estate, and elects to have it paid to her in cash, and at the time of the decedent's death, and at the time of making her claim there is not that amount of cash belonging to the estate, her claim will be restricted to the cash on hand at the time the claim was made.

2. When a widow, in her claim to have set apart to her $300 out of her deceased husband's estate in her lifetime, specified the particular property which she elected to retain, her legal representatives, on the distribution of the estate, must be restricted to the designation which she has thus made.

3. A will must be construed so that every clause may take effect, if that be possible. No part will be rejected as repugnant if any fair and reasonable construction can be given to the whole, which will render every part effective.

4. Where the will leaves the mode of distribution doubtful, the court will apply the principle of the Statute of Distributions.

5. A testator bequeathed one third of his personal estate absolutely. In a subsequent clause of his will he recited that he held judgments, liens on his wife's real estate; these he directed to be kept revived as liens, but not to be collected until after the death of his wife, when they should be divided equally among his children. *Held*, on distribution, that the estate of his widow took one third of the said judgments.

April 30th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

APPEAL from the Orphans' Court of *Northumberland county:* Of January Term, 1886, No. 461.

Appeal of Spencer L. Finney, executor of the last will and testament of Elizabeth Housel, deceased, from a decree of said court confirming the report of George Hill, Esq., Auditor, appointed by the said court to distribute the funds in the hands of E. C. Voris, executor of the last will and testament of John M. Housel, deceased, and overruling the exceptions filed to said Auditor's report.

The following are the facts as they appeared before the Auditor.

John M. Housel, the decedent, died on the 16th day of March, 1884. About fifteen years before his death he married Elizabeth Miller, a maiden lady residing in the borough of Milton, Pa. At the time of his marriage Mr. Housel was a widower, with three adult male children living, and a large number of grandchildren. Mrs. Elizabeth Housel (*née* Mil-

ler) was the owner of a house and lot situate on Front street, Milton, which dwelling was occupied by Mr. and Mrs. Housel from the date of their marriage until the date of their respective deaths. Mrs. Housel survived her husband about two and one half months. She died without issue. Both left wills. On the 2d day of April, 1868, before her marriage to Mr. Housel, Elizabeth Miller executed to one Dr. Charles Dougal a mortgage for the sum of $2,400, which was subsequently assigned to Mr. Housel for the consideration of $1,500. After her marriage, viz., on the 15th day of March, 1871, Mrs. Housel executed another mortgage on the premises before mentioned to one Hannah B. Kauffman for the sum of $1,000, which mortgage was also subsequently assigned to John M. Housel, the decedent. In the will of Mr. Housel he referred to judgments which he there alleged he held against his wife. Upon a search being made by his executor no judgments could be found of record, consequently he interrogated Mrs. Housel, the widow, in regard to the matter. She said she owed her husband $2,500, and would confess judgment for that amount to him (the executor), which she accordingly did. After the death of Mrs. Housel the above mortgages were discovered upon the record. Before the discovery of the mortgages the judgment, to wit, $2,500, and interest from the date of the death of Mrs. Housel, $38.75, were paid to Mr. Housel's executor, and now form a part of the fund for distribution. Mrs. Housel left a will appointing S. L. Finney her executor, who converted her entire estate into money. All of her real estate (being that above mentioned) brought, at public sale, the sum of $4,600; her personal property sold for $181. Before her death, viz., on the 2d day of April, 1884, Mrs. Housel served a notice on the executor of her late husband in form as follows:

" Elijah Voris, Esq.,
          Executor, &c.
  "*Sir*.—You are hereby notified that I, Elizabeth Housel, widow of deceased, make claim for $300 out of the estate of my deceased husband, which is allowed by law. I desire said sum to be paid me in cash.
                    " Respectfully yours, &c.,
                         " ELIZABETH HOUSEL."

Mr. Housel's estate consisted almost entirely of evidences of debt. Among the assets of his estate were found $109.24 in money, household goods, bonds of the borough of Milton to the amount of $800, payable to John M. Housel or bearer, &c. These bonds, and all other evidences of debt, were real-

ized upon by the executor of Mr. Housel at their face value after the service of the above notice.

John M. Housel's creditors, his children and grandchildren, and the executor of his widow, Elizabeth Housel, were claimants before the Auditor.

There were two questions raised before the Auditor, and by exceptions to the Auditor's report, before the court.

1. Whether, under a proper construction of Mr. Housel's will, his widow would have been entitled to receive, and, consequently, whether her executor is now entitled to receive, the one third of his estate absolutely, or should the amount realized upon the judgment given by Mrs. Housel in her lifetime to Mr. Housel's executor be deducted, and one third of the balance distributed to her executor. Mr. Housel's will, *inter alia*, provided as follows:

"Item.—I give and bequeath to my beloved wife, Elizabeth Housel, all my household furniture or goods during the term of her natural life, and direct that no security be required from her for the same, and I also give and bequeath unto my said wife, Elizabeth Housel (after my just debts and funeral expenses shall have been paid and fully settled by my executor), the one third of my personal estate to her own use and benefit absolutely. The household furniture shall not be included in the appraisement of my personal estate as aforesaid."

"Item.—As I hold judgments against my said wife, Elizabeth Housel, which are entered up in the Court of Common Pleas of Nothumberland county against the property which I now occupy, it is my will, and I so direct, that no part of said judgments shall be collected by my executor or heirs from my said wife, Elizabeth Housel, during the term of her natural life, but the same shall be kept revived as a lien against her property aforesaid until after her decease, and after her death the proceeds thereof shall be divided equally among my surviving children and the children of such as are deceased, the said children of such of my children as are deceased to take the share of their respective parents."

2. Whether the widow, under her claim for $300, would have been entitled to receive, and, consequently, whether her executor is now entitled to receive, $300 from the estate of John M. Housel, deceased, or can he receive only the amount of money on hand at the time said claim was made, to wit, $109.24.

The Auditor reported adversely to the estate of the widow as to both questions.

Exceptions were filed to this report by the executor of

Elizabeth Housel, deceased, which were overruled by the court, ROCKEFELLER, P. J., and the report confirmed.

Spencer L. Finney, executor of Elizabeth Housel, deceased, thereupon took this appeal, assigning for error the overruling of his exceptions and the confirmation of the Auditor's report.

*William H. Hackenberg* (*S. P. Wolverton* with him), for appellant.—1. Every decided case that we have been able to find where the right to take money out of the proceeds arising from the conversion of property was denied, was where the proceeds were realized from the sale of property requiring appraisement to ascertain its value. Where an appraisement is not necessary an election to take in cash gives the widow the right to receive her $300 out of the proceeds of the equivalent of cash: see Soult's Appeal, 1 Norris, 156; Larrison's Appeal, 12 Casey, 130; Kirkpatrick's Estate, 5 Phila., 98.

2. As to the construction of the testator's will, we hold, the intention of the testator to which all other rules are in subordination, is the governing rule in the construction of wills: Beltzhoven *v.* Costen, 7 Barr, 18; Stoner & Barr's Appeal, 2 Barr, 431.

The manifest intention of Mr. Housel, was to give his wife what the intestate laws would allow her, and also the use of the mortgages during life.

In the court below the appellees cited authority to the effect that where a will contained two contradictory clauses the first must give way to the second. It is submitted that this rule of construction has no application to this case, because the clauses in this will are not irreconcilable.

The latter clause is not to be adopted if both can stand together: Snively *v.* Stover, 28 P. F. S., 484; Newbald *v.* Boone, 2 P. F. S., 174; Stickel's Appeal, 5 Casey, 236; Sheet's Appeal, 1 Norris, 217.

A will is not to be so read as to contradict itself, if it is possible to reconcile the apparent contradictions: Edmunds *v.* Nicholas, 10 Harris, 79; White *v.* Allen, 81 Ind., 224; Vantechten *v.* Keator, 63 N. Y. 52.

In cases of doubtful construction the law leans in favor of a distribution as nearly conformable to the general rules of ininheritance as possible: Amelia Smith's Appeal, 11 Harris, 11; Minter's Appeal, 4 Wright, 115.

*C. G. Voris* (*William F. Derr* with him) for appellees.

1. An election to take the $300 in cash does not, *per se*, give the widow the right to securities belonging to the estate of her husband. They are not the equivalent of cash although

no appraisement is necessary. To entitle her to receive a particular security or its proceeds she must so elect.

The word *retain* as used in the Acts of 1851 and 1859, denotes that the widow is to continue to hold, to keep possession of property belonging to her husband's estate at the time of his death—it refers to the condition of his estate at that time." "The Act contemplates a retention by the widow or minor children of property belonging to the decedent at his death:" Hunt's Appeal, 4 Out., 590.

They are to retain, which implies that the articles were in the hands of the decedent at the time of his death: Witmer's Estate, 2 Pearson, 473.

2. As to the construction of the will we hold, that the first item in the will, giving one third of the personal estate to the widow absolutely, is inconsistent and irreconcilable with the idea of a large part of it going to her for life and after her death to the testator's children, as provided in the second item.

If both cannot stand, the first must give way to the last: Lewis's Estate, 3 Wharton, 162; Stickle's Appeal, 5 Casey, 234; Fox's Appeal, 11 W. N. C., 236; Robinson v. Martin, 2 Yeates, 525.

The intention of the testator is the governing rule in the construction of wills: Beltzhoven v. Costen, 7 Barr, 18; Stoner and Barr's Appeal, 2 Barr, 431.

But as is said in Middleswarth's Adm'r v. Blackmore *et al.*, 24 P. F. S., 414; Blackmore v. Hickman, 32 P. F. S., 288, "the intention of a testator is not to be ascertained by considering the language of the devise only; the construction must be that which is consistent with the whole scheme of the will. A devise may be restrained by subsequent expressions."

There is no latent ambiguity in this will, and the intention of the testator must be gathered from the four corners of the will: Comfort v. Mather, 2 W. &. S., 450. "The legal construction of a will cannot be explained or altered by parol declarations of the testator of his understandings of its meaning, or his intention to do something else;" see also Woodman v. Good, 6 W. &. S., 173.

Mr. Justice CLARK delivered the opinion of the court, May 17th, 1886.

The first question raised on this record is whether or not the executor of the last will and testament of Elizabeth Housel, deceased, is entitled to receive in this distribution the full sum of $300, on her claim for exemption as the widow of John M. Housel, deceased, or $109.24 only, the amount of money on hand at the time the claim of exemption was made.

The Act of 14th April, 1851, provides that "the widow or children of any decedent dying within this Commonwealth, may retain either real or personal property, belonging to said estate, to the value of three hundred dollars, and the same shall not be sold but suffered to remain for the use of the widow and family; and it shall be the duty of the executor or administrator of such decedent to have the property appraised, &c."

In Larrison's Appeal, 12 Casey, 130, it was held that "property" within the meaning of this Act embraced money, bonds and other evidences of indebtedness, and that when such property was chosen to be retained, there was no necessity for an appraisement of it. The Act of 8th April, 1859, was, in this respect, declaratory merely of the law as it had previously existed. The widow or children of a decedent may therefore elect to retain three hundred dollars, "or any part thereof, out of any bank notes, money, stocks, judgments, or other indebtedness" belonging to the decedent's estate. But when the widow in her claim of exemption has, in her lifetime, specified the particular property which she elected to retain, her legal representatives, in the distribution of the estate, must, we think, be restricted to the designation which she thus made.

John M. Housel, the testator, whose estate is now for distribution, died 16th March, 1884. His estate consisted of $109.24 cash, some bonds, mortgages, promissory notes, &c., a small amount of household goods, &c. A few days after the letters were issued Elizabeth Housel notified the executor, in writing, that she claimed three hundred dollars out of the estate of her deceased husband, allowed by law to her as his widow, and stated specifically that she desired that sum to be paid to her "in cash." No appraisement was made or taken by the executor, under her claim, indeed it may be conceded, none was necessary. On the 28th May following the widow also died, and the claim is presented by the executor of her last will and testament.

Her claim was for "cash;" $109.24, was all the cash then belonging to the estate, and to this extent only, her legal representatives are now entitled, under that claim in this distribution. If her demand had been made after the bonds, notes, or other securities had been realized on, a different question would be presented, but she died before they had been converted to money. She might have claimed her exemption, partly in money and partly in any of the securities, or wholly in the latter; but she did not, and we think the learned court was right in restricting the claim to the cash on hand when the claim was made.

The second question is supposed to arise upon the construction of the last will and testament of John M. Housel, deceased. Elizabeth, his wife, at the time of her marriage, was the owner of a certain house and lot of ground in Milton. It was encumbered by mortgage to the amount of $2,400; a second mortgage was afterwards executed upon the same property in the sum of $1,000, and both were subsequently purchased by and assigned to her husband, who was in the possession of the property at the time of his decease.

In the last will and testament of John M. Housel, deceased, it is, *inter alia*, provided as follows: "Item. I give and bequeath to my beloved wife, Elizabeth Housel, all my household furniture or goods during the term of her natural life and direct that no security be required from her for the same; and I also give and bequeath unto my said wife, Elizabeth Housel, (after my just debts and funeral expenses shall have been paid and fully settled by my executor), the one third of my personal estate to her own use and benefit absolutely; the household furniture, however, shall not be included in the appraisement of my personal estate before distribution as aforesaid."

"Item. As I hold judgments against my said wife, Elizabeth Housel, which are entered up in the Court of Common Pleas of Northumberland County against the property which I now occupy, it is my will and I so direct that no part of said judgments shall be collected by my executor or heirs from my said wife, Elizabeth Housel, during the term of her natural life, but the same shall be kept revived as a lien against her property aforesaid until after her decease, and after her death the proceeds thereof shall be divided equally among my surviving children and the children of such as are deceased; the said children of such of my children as are deceased to take the share of their respective parent.

It is conceded, that the testator was mistaken as to the nature of the securities he held upon his wife's property, and that the "judgments" referred to in the will were in fact the mortgages mentioned. The question is, whether or not, upon a fair construction of the will, the bequest to the widow of the one third of the personal estate to her own use and benefit, in the clause first quoted, was intended to embrace one third of the "judgments," referred to in the second.

The widow's claim here is based upon the assumption of a surrender of her right under the intestate law, and her acceptance of the will; she stands upon an equity which is superior even to that of a child; she is not to be treated as a mere volunteer, but as a purchaser, and is therefore entitled to a fair and reasonable construction of the will in her interest: Reed *v.* Reed, 9 Watts, 263.

3 AMERMAN—2

The provision for the widow, would appear to have been the subject of his chief solicitude. He gave to her the household furniture &c., during her lifetime, one third of his personal estate after payment of debts, etc., absolutely, and provided that her indebtedness to him should not be collected whilst she lived. The bequest of one third of his personal estate is in the most distinct and unequivocal language, and in order apparently, that there might be no occasion for mistaking his intention, in this respect, he directs, that the household furniture, is not to be included in the distribution, in which the amount of that one third is to be ascertained. The gold watch, which he bequeathed to his son James, was not to be taken into the appraisement, and it is quite probable, that the testator intended that it should in like manner be excluded. Let that be as it may, it is certain, that the will does not indicate any intention of the testator, that any other portion of his personal property, excepting what he thus particularly specified, was to be excluded from the computation of the widow's third.

It is true that in the second item he refers to the judgments, (mortgages) he holds against his wife, and directs that no part of these judgments shall be collected from her during her life, but that the same shall by revival be maintained as liens, etc., and that after his decease, the proceeds shall be divided as he directs; but this, as we understand it, does not involve any inconsistency with the clause first quoted. The bequest of one third of the judgments to the widow does not conflict with a provision that they shall not be collected within a given period, whether that be her lifetime, or the lifetime of one of his children, or any other period of time.

There is no provision that the widow shall have the benefit of the judgments during her life time; they were not to be collected, but they were to be revived, and the interest thereon to accumulate until her death, and the " proceeds," that is to say, the money arising or obtained therefrom, to be distributed to his children.

A will must be construed so that every clause may take effect, if that be possible. No part will be rejected as repugnant, if any fair and reasonable construction can be given to the whole, which will render every part effective: Nathans *v.* Morris, 4 Wharton, 389; Mutter's Estate, 38 Pa. St., 314; Seibert *v.* Wise, 70 Pa. St., 147. But even if the direction in this second clause of the will may be considered ambiguous or of doubtful meaning, which we do not think it is, it must be construed in subordination to the original bequest, the terms of which are clear, and unequivocal: Sheets' Appeal, 82 Pa. St., 213.

It will be observed also, that the absolute share of the widow under the will, as we have interpreted it, is in accordance with her rights under the intestate laws; and it has been held in numerous cases, that where the will leaves the mode of distribution doubtful, the court will apply the principle of the Statute of Distributions: Minter's Appeal, 40 Pa. St., 111; Horwitz v. Norris, 60 Pa. St., 161; Grim's Appeal, 89 Pa. St., 333; Huffner v. Wyncoop, 97 Pa. St., 130.

By every rule of construction, we think, this will should be read as giving to the widow her full share of the personalty. The testator clearly contemplated an appraisement of his entire estate, except as specifically provided, and a distribution upon the basis of that appraisment; one third to the widow, of the appraised value. He explicitly directs what shall be omitted from this appraisement, and distribution, to wit, his gold watch, and his household furniture; if he had intended to exclude the mortgages, it is reasonable to suppose he would have said so.

It was suggested at the argument, that the question of interest, had been reserved, to be disposed of in the future. We infer from this, that there may be matters bearing upon the question of the widow's responsibility for interest, or upon the extent of that responsibility, of which we are not informed; we will not therefore attempt a distribution upon the basis of this opinion, but will remit the record, in order that this may be done in the court below.

The decree of the Orphans' Court is reversed; and it is ordered that the record be remitted, in order that distribution may be made in accordance with this opinion; and it is ordered that the appellees pay the costs of this appeal.