## Titus's Estate

*George B. Munn* and *William Glassman*, for claimant.
*Alexander & Clark*, contra.

ARIRD, P. J., April 28, 1932.—John S. Titus died January 31, 1930, and his will was probated and entered in the register's office of Warren County on February 6, 1930, and letters testamentary issued to Mary Ellen Titus and Fred J. Titus, executors named in the will.

It appearing that the personal property was insufficient for the payment of decedent's debts, the executors petitioned the orphans' court for leave to sell the real estate for the payment of debts, and an order was made for a public sale.

The property was sold at public sale by the executors in three separate parcels. Parcel number one was the undivided one-half interest of the decedent in the so-called Curtin and Noyes leaseholds, containing 112½ acres and 20 acres, respectively. The first lien on this parcel was a leasehold mortgage given by the decedent and H. L. Ford, the owner of the other one-half interest, on June 12, 1907, to Warren National Bank, entered July 1, 1907, in Mortgage Book 35, page 303, on which mortgage, at the date of the sale, there remained unpaid the sum of $2214.08. A judgment of Sheffield National Bank, entered

April 1, 1926, on which there was a balance unpaid, at the date of the sale, of some eight hundred dollars, is next in point of time, and this is followed by a mortgage given by the decedent on his undivided one-half interest to Warren National Bank, dated May 5, 1926, and entered May 5, 1926, in Mortgage Book 74, page 37, on which, at the date of said sale, there remained unpaid the sum of $6443.08, or thereabouts, and there are several other judgments entered subsequently to this mortgage. Parcel number one was sold subject to said first mortgage of Warren National Bank to said bank for the sum of $25.

Parcel number two was the undivided three-fourths interest of the decedent in the so-called Pettigrew lease, containing 275 acres, more or less. The above-mentioned judgment of Sheffield National Bank and the above-mentioned mortgage of Warren National Bank, entered May 5, 1926, and the several judgments entered later are to be considered as to this parcel. Parcel number two was sold to Warren National Bank for the sum of $950, free of liens.

Parcel number three was a farm owned in fee by the decedent, containing seventy-three acres nineteen perches, more or less. The above-mentioned judgment of Sheffield National Bank and the mortgage of Warren National Bank, dated May 5, 1926, and subsequently entered judgments, are to be considered as to this parcel. Parcel number three was sold to Clark E. Nelson for the sum of $950, divested of liens.

The proceeds of these sales are thus in the hands of the executors.

The widow, Ellen Titus, filed in this court her petition, claiming the sum of $500 as her widow's exemption out of the proceeds of the sale of such real estate, according to the provisions of section twelve of the Fiduciaries Act of June 7, 1917, P. L. 447, and gave notice that the same would be presented for approval on March 2, 1931, unless exceptions were filed thereto in the meantime. Before the date fixed for approval, Warren National Bank filed exceptions to the effect that such claim for widow's exemption could not be made out of the proceeds of the sale of real estate as against the right and equity of Warren National Bank as mortgagee to such proceeds, her claim for exemption not being effective as against the mortgage above mentioned of May 5, 1926, which encumbered all three of the properties sold and was divested by the sale. An answer to these exceptions was filed by the widow, to the effect that the exceptions did not set up that she had lost her right to claim her exemption nor that she was not the widow of the decedent, and that the exceptions presented solely the question of distribution of the proceeds realized from the sale of the decedent's real estate.

The matter of the allowance of the widow's exemption thus came before the court for argument, and oral arguments were presented by counsel for the respective parties and briefs were filed.

Under the Fiduciaries Act of June 7, 1917, P. L. 447, Sec. 12, the widow may retain or claim either real or personal property, or the proceeds of either real or personal property belonging to the estate, to the value of $500. The apparent purpose of this legislation is to fix definitely the right of the widow to claim her exemption out of the proceeds of property which may be sold by the executor or administrator as well as out of the property as it may exist at the death of her husband. Under the Act of April 14, 1851, P. L. 612, there was no express provision for claiming the exemption out of the proceeds of real or personal property. There were decisions under the Act of 1851 to the effect that she must claim her exemption out of the property as it existed at the death of her husband: Snyder's Estate, 12 Dist. R. 536; Dorscheimer's Estate, 12 Pa. Superior Ct. 34; Hunt's Appeal, 100 Pa. 590; Finney's Appeal, 113 Pa. 11; Rigby's Estate, 18 Pa. Superior Ct. 5.

The Act of 1917 evidently changes the effect of these decisions. However, there would seem to be no reason why this change in the legislation should affect the principle laid down in the Pennsylvania decisions that a widow is not entitled to her exemption in preference to her deceased husband's mortgagee. The reason for the rule is thus stated in Kauffman's Appeal, 112 Pa. 645:

"The reason why such mortgage shall not be impaired by the statutory exemption in favor of the widow or children is said to arise from the contract by which the debtor pledges the land to his creditors as a security for the debt. And though mortgages are commonly spoken of as mere securities for payment of money, they are such because they are formal pledges of the land. The mortgagee, upon default in performance by the mortgagor of the stipulations in the deed, may, by ejectment, obtain possession of the premises, and the exemption laws do not apply to the impairing of such a security: Gangwere's Appeal, 36 Pa. 466; Nerpel's Appeal, 91 Pa. 334."

There would seem to be no reason why the exemption should be allowed out of the proceeds of the mortgaged premises as against the mortgagee, any more than it should be allowed out of the mortgaged property itself in preference to the mortgagee.

In Rowe's Estate, 22 Pa. Superior Ct. 597, the fund for distribution in the orphans' court arose from the sale of decedent's real estate by the administratrix under an order of court, and the real estate was covered by a mortgage. It was held that the widow could not claim her exemption out of the real estate fund in preference to the mortgage, even though it was not a purchase-money mortgage. The same principle is recognized in Peebles's Estate, 157 Pa. 605, 609.

We conclude, therefore, that the addition of the words "or the proceeds of either real or personal property" to the legislation providing for the widow's exemption, does not affect the application of the principle that the widow's claim for exemption cannot have preference over the rights of the husband's mortgagee, as to the mortgaged real estate of the proceeds of the sale of the mortgaged real estate. We are confirmed in this by a reference in the opinion of the Superior Court in the case of Ruff v. Barclay-Westmoreland Trust Co. et al., 79 Pa. Superior Ct. 370, 373, where the Act of 1917 is quoted and it is stated that the widow's claim for exemption was deferred to the mortgage, citing Kauffman's Appeal, 112 Pa. 645. Again, the fact that the mortgage of Warren National Bank is preceded by a judgment does not, in itself, make any difference as to the application of the principle, as shown by the decision in Kauffman's Appeal, 112 Pa. 645, where the mortgage was preceded by a judgment.

Further, there would seem to be no reason why the preference given to a mortgage over the claim for widow's exemption should not apply to a leasehold mortgage as well as to a mortgage of real estate. The principle underlying the rule as set out in Kauffman's Appeal, 112 Pa. 645, above quoted, would apply to the mortgage contract because of the nature of the contract, regardless of the kind of property transferred by the mortgage. It is pointed out that when the widow's exemption was provided for under the Act of 1851, there was no legislation authorizing the mortgaging of a leasehold, but as the rule giving preference to the mortgage over the exemption does not depend upon the express language of any statute, and, on the contrary, has arisen from the reasoned decisions of the courts, this would seem to make no difference.

It follows, that while the widow's claim for exemption may properly be allowed out of the proceeds of the sale of her husband's property as made by the executors, such allowance must be made subject to the rights of Warren National Bank as mortgagee of the property sold.

347

It is to be noted that the only matter before the court for decision at this time is that of the widow's claim for exemption. The matter of the distribution of the proceeds of the sale in the hands of the executors will properly come before the court on final distribution of this insolvent estate. At that time the rights of the various lien creditors will be for adjudication and they will be entitled to be heard. The only parties now before the court are the mortgagee and the widow. The making of a complete distribution of the proceeds of the sale would involve the rights of any other lien creditors, and the exemption cannot be properly set aside out of the proceeds of the sale without first considering the rights and claims of all concerned.

At this time, therefore, we cannot go beyond holding generally that the claim for exemption is subject to the rights of the mortgagee, and the exemption should not be turned over to the widow until an adjudication on final distribution.　　　　From Joseph H. Goldstein, Warren, Pa.