# Commonwealth, ex rel., *v.* Heilman, Appellant.

*Beneficial associations—Subordinate councils of beneficial associations—Incorporation—Junior Order of United American Mechanics, State Council of Pennsylvania—Act of March 1, 1870, P. L. 288—Disputes—Settlement—Election of officers—Quo warranto.*

1. The mere incorporation of a subordinate council of a secret, fraternal and beneficial order does not render such council independent of the order, especially when such council adopts a constitution and by-laws which unequivocally recognize the supremacy of the national council and constitution and laws of the order.

2. The intent of the Act of March 1, 1870, P. L. 288, incorporating the State Council of the Junior Order of United American Mechanics of the State of Pennsylvania, was not to make the State Council independent of the order, but to give corporate form to a society already in existence for the purpose of better promoting the principles of the order.

3. Where the constitution and by-laws of an incorporated state council of a secret, fraternal and beneficial order provide that such council shall be subject to the laws of the order, and subordinate to its national council, the laws of the order providing for the settlement of certain disputes by a designated tribunal are part of the contract which the members of the corporation have made among themselves, and the decision of such tribunal, rendered after a fair hearing, and without fraud or collusion will be enforced by the courts.

4. Where the National Council of the Junior Order of American Mechanics had chartered a number of local councils to form an association known as the State Council of Pennsylvania, and the State Council was incorporated and adopted a constitution and by-laws which recognized the supremacy of the laws governing the whole order, and the constitution of the order vested a "National Judiciary" with exclusive jurisdiction of "all controversies whatsoever, the character of which is such that there is no inferior tribunal having complete jurisdiction," such "National·Judiciary" was empowered to decide a dispute between rival claimants for office in the State Council; the decision of the "National Judiciary" that certain persons were wrongfully holding office in the State Council was binding upon the members thereof, and could be enforced by the courts in quo warranto proceedings, where such decision was rendered after a hearing of which due notice was given to all concerned, and was not impeached for collusion or fraud.

Argued March 25, 1913.   Appeal, No. 410, Jan. T., 1912, by respondents, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1910, No. 2834, of ouster on quo warranto in case of Commonwealth of Pennsylvania ex rel. B. Frank Myers, John S. Alcorn, M. P. Dickeson, Charles H. Hall and Thomas H. Walters, v. W. Elmer Heilman, Thomas F. Ashford, John R. McKelvey, George S. Ford and A. H. Leslie.   Before·BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.   Affirmed.

Quo warranto to oust the respondents from office in a beneficial society.

AUDENRIED, J., filed the following opinion:

·   The relators were elected to the offices in dispute by a body of members of the corporation, known as the State Council of the Junior Order of United American Mechanics of the State of Pennsylvania, assembled on September 20, 1910, at the Ensign Building in the City of .Erie.   The respondents were elected to those offices by another body of members of the corporation assembled on the same day at the Reed House in that city.   The fundamental question in the case, therefore, is, which of

the two bodies of members is properly to be regarded as the corporation above mentioned, or, rather, which of the two meetings held as above mentioned, at Erie on the date named, was the lawful annual meeting of that corporation.

Although the terms for which the several parties claim to have been elected to the offices in dispute expired before the argument of the case, the question here presented is by no means merely academic. There are still two rival bodies made up of individuals all claiming to be members of the State Council of Pennsylvania, each of which, as the result of what happened at Erie on the date mentioned, asserts that it is the state council and maintains an organization as such. Some of the local councils adhere to one of these and some to the other. The affairs of the order in Pennsylvania are in confusion, and it is impossible to settle them until the courts of the Commonwealth have passed upon the situation.

For over forty years prior to September 20, 1910, the corporation to which reference has been made, and whose offices are here in dispute, had been connected with an association known as the Junior Order of United American Mechanics. This is a secret, fraternal and beneficial society which now includes almost a quarter of a million members, who are scattered throughout all of the United States. They are organized in bodies known as councils. In most states the several councils of the order as associated, by representation, in an organization known as the state council, which is established for certain purposes of local government. All the members of the order are associated through representation in a higher governing body styled the National Council of the Junior Order of United American Mechanics, their representation therein being obtained through their local councils and their respective state councils. This form of association is a familiar one. The reports of the decisions of the courts of this State

show many instances of its adoption by other fraternal societies, and it presents numerous points of similarity to the systems of organization adopted by certain ecclesiastical bodies.

Whatever may have been its origin, historically, and the course of the development and growth of this order, it is not open to dispute that in the year 1869 the State Council of Pennsylvania was a mere administrative agency in the government of the order's members in this State. It was made up in large part of representatives chosen by the local councils. These representatives were always changing. It was assigned a certain part in the business of the order, but outside of the scope of its appointed functions it had absolutely no power. It is true that for certain purposes it was treated as an entity by the by-laws of the order (in which term are included the so-called National Constitution and National Laws); but its acquiescence in the view that its status was a subordinate one appears plainly in what are styled the Constitution and Laws of the State Council. It was a mere dependency of the order and was, of course, subject to the national council which was the order itself assembled in the persons of its representatives.

If the relationship just outlined as that existing in the year 1869 between the state council on the one hand and the Junior Order of United American Mechanics, and its national council, on the other, still continues unmodified, it is quite clear what disposition should be made of this case.

The question of the legality of the two meetings at Erie and of the title to the offices of the state council has been decided by a tribunal on which the power to adjudicate such disputes is conferred by the by-laws of the order.

On December 12, 1910, in proceedings before the National Judiciary of the Junior Order of United American Mechanics instituted by the relators in this case against the persons named as respondents herein, it was

adjudged by that tribunal that the meeting organized at the Ensign Building by those members of the State Council who had left the meeting convened at the Reed House, on September 20, 1910, was held in accordance with the laws of the order, and was, therefore, a lawful session of the state council, and that the meeting held at the Reed House under the presidency of Mr. McKelvey was irregular and without authority to act as the state council. It was also held by the national judiciary that the relators and not the respondents were duly elected to the several offices in dispute here.

If by its rules, or by-laws, a society, incorporated or voluntary, has appointed a certain judicatory to hear and determine controversies between its members in relation to its offices, or with respect to the right of membership, or rights incidental to membership, the judgment of such a tribunal is to be regarded as conclusive.

This results because due effect must be accorded to contracts which are not repugnant to law. The provisions of the by-laws of a society constitute, in part, the contract under which its members are associated. New terms may not be read into them, nor may their lawful provisions be disregarded. The law does not forbid the selection by the parties to a contract of an arbitrator to adjust or settle disputes arising under it. The courts of the Commonwealth will therefore, give effect to the by-laws of societies by which tribunals are created for the decision of the internal disputes of such organizations, and they will not sit to hear appeals from the findings of the umpires or referees so appointed. It follows, therefore, that what has passed in rem judicatam, in the regular course of proceeding before a tribunal such as the national judiciary of this order, cannot be disturbed here provided that the dispute that it assumed to decide was one within its jurisdiction; that the parties whose rights were involved were given an opportunity to appear and be heard; and that no fraud was practiced: Crow v. Capital City Council, 26 Pa.

Superior Ct. 411; Badger v. Aeolian Council No. 17, 39 Pa. Superior Ct. 406; Derry Council No. 40 v. State Council, 197 Pa. St. 413.

Under this view of the law, and upon the assumption that since 1869 nothing has occurred that has affected the status of the State Council, the questions open for investigation are: first, whether the controversy decided by the decree entered by the national judiciary on December 12, 1910, fell within its jurisdiction; second, whether the respondents in the proceedings before that tribunal had an opportunity to appear and defend themselves; third, whether the proceedings were conducted regularly; and fourth, whether they are tainted by fraud. If the adjudication of the dispute turned upon the application of any by-law of the order, the validity of that by-law is also to be considered by the court and the question of its reasonableness must, therefore, be decided: Commonwealth v. Union League, 135 Pa. St. 301.

1. Was the question whether the offices of the state council for the year beginning September 21, 1910, belonged to the relators or to the respondents within the jurisdiction of the national judiciary? Upon this point the constitution (so-called) of the national council leaves no room for doubt. By section 10 of Article IX the national judiciary is vested with exclusive jurisdiction of "all controversies whatsoever, the character of which is such that there is no inferior tribunal having complete jurisdiction." The only judicatories of the order inferior to the National Judiciary are the local councils and the state councils. It is not, of course, contended that any of the former had "complete jurisdiction" over this question, nor is it claimed that the dispute over the offices of the State Council of Pennsylvania may be decided by the judiciary of the council of another state. It follows then, that if jurisdiction over this matter is not in the State Judiciary of Pennsylvania it must be in the National Judiciary. But the ques-

tion who are the officers of the state council necessarily involves the question who are the lawful members of the state judiciary (see Sections 3 and 4 of Article V of the Constitution of the state council); and before it can be decided which of the two bodies claiming to be the state judiciary is the proper tribunal to determine who is the lawful state councilor, the very question to be laid before the tribunal must itself be settled. It is clear, therefore, that this is a case over which none but the national judiciary can have complete jurisdiction and that to the national judiciary it of necessity appertains.

2. It appears by the agreement of the parties hereto that the respondents were duly served with notice of the proceedings instituted against them by the relators before the national judiciary; that they were apprised of the time and place fixed by the latter for the hearing of the cause; and that their failure to appear before that tribunal was intentional on their part.

3. It is not alleged by the respondents that the formal requirements of the by-laws of the order and rules of the national judiciary were not fully complied with in the proceedings in which the right to the offices of the state council was determined; and a thorough examination of the record in those proceedings establishes their regularity in all essential points.

4. There is nothing in the facts agreed upon that would warrant a suspicion that in the proceedings under consideration there was a fraudulent practice on the part of the relators or unfairness on the part of the national judiciary. The petition by which the proceedings were initiated sets forth the facts in substantial accord with the agreed statement of facts filed in this case. The matter was heard ex parte, it is true, but it was not disposed of by a decree pro confesso or a judgment by default. Its decision was based on testimony taken in support of the relators' allegations, which the respond-

ents had an opportunity to controvert had they seen fit to do so.

5. It is contended that in the determination of the issue before the national judiciary in the case of Myers, et al., v. Heilman, et al., was necessarily involved the question of the membership of Mr. McKelvey in the order; that his status depended on the legality of his expulsion therefrom; and that this in turn depended on the validity of the by-law of the order, for the violation of which the punishment of expulsion had been inflicted on him. It must be conceded, we think, that if the decree entered December 2, 1910, is to be regarded as sound, it can only be so because the by-law of the national council that Mr. McKelvey was found to have violated was a valid one.

It is to be observed at this point that the sole objection raised to the proceedings that resulted in the expulsion of McKelvey and his fellow officers rests to the assertion that the state council entered judgment therein by default within less than ten days after the day fixed for trial. The record, however, does not show that the judgment was entered by default. The defendants therein appeared and answered. It is true that they submitted no evidence at the trial, but the charge against them was not disposed of pro confesso. The complainants proved their case and the decree was entered on the proofs. Such a case is not within the application of Section 4, Chapter 6, Division III of the National Laws.

The by-law that the defendants in that case were accused of violating was Section II, Chapter 1, Division VI, of the National Laws. This requires obedience by any board of officers of the association to any mandate or order issued by any other board of officers in conformity with law, under penalty of reprimand, suspension or expulsion from the order. As some such provision seems absolutely necessary to secure proper cooperation among the various officials of the order, this regulation must be held a reasonable one and therefore

valid.  We do not see how it can be attacked on the ground that compliance with it would have involved the defendants in disobedience to the mandate of the state council whose officers they were.  It was impossible for an order of the national board of officers issued in conformity with law, to conflict with any lawful resolution of the state council.  If both were lawful there could be no conflict between them.  If they conflicted, either the order or the resolution was without basis in law.  It is no objection to a by-law requiring obedience by all officers of the order to the lawful mandate of their superiors that this casts upon them the necessity of deciding which of two conflicting mandates emanating from different sources is lawful and therefore entitled to respect.  All are presumed to know the law and are held to act on their knowledge of it at their peril.

It must have been known to the respondents that the state council had no right to hold back the taxes collected for the national council as a sort of pledge to secure the redress of grievances, and that its order for the payment of the sum in hand, if approved and vouched by themselves, must be treated as if stripped of this improper condition and complied with at once. The demand for the taxes by the national board of officers made their duty to pay them very clear and the leniency displayed by the national judiciary in the allowance of a locus penitentiæ of more than seven months before enforcing the penalty that they had incurred left them no room for complaint. .

It is clear, we think, that the judgment of the national judiciary on the question of the right of the several relators to the respective offices of the state council of Pennsylvania has not been impeached upon any of the grounds above discussed, and that, therefore, unless the relations between the state council and the national council or the order at large have been altered since the year 1869, it is conclusive as to the respective rights of the parties to this cause.

It is urged, however, that on March 1, 1870, the state council of Pennsylvania became a corporation; that the national council was incorporated on April 10, 1893; that these corporations are absolutely separate and organically distinct, the only tie between them being a contractual one, the severance of which could result in nothing but a claim for damages; that the national council has no power to deprive the respondents of their offices in the corporation known as the state council; and that the case presents merely an attempt on the part of one corporation to control the internal affairs and management of another, authority to do which it does not possess under the laws of this Commonwealth.

It is true, speaking generally, that before the law every corporation is a separate and distinct body, dissociated from all others. It is likewise true that an attempt by one corporation to interfere with the internal organization of another must fail. Such, however, is not the character of the present proceeding. Neither of the corporations named is a party to it. It arises out of a controversy between the members of one of them over the question of the right to hold certain offices therein. It is a contest between individual members of the same corporation.

It is conceived that the pivotal point on which the case turns is the question as to how far the original relations between the Junior Order of United American Mechanics and the state council of Pennsylvania have been affected by the incorporation of the latter body.

In the 5th section of the Act of March 1, 1870, by which the state council of Pennsylvania was granted corporate powers, it was provided that the by-laws of that organization should continue to bind the corporation until altered, amended or abrogated. In the constitution and laws of the state council then in force, and, in this respect, unchanged down to the time of the events out of which this case originated, it was stipulated that they were in conformity with and subject to

the laws of the national council. It was provided that they might be amended, but the agreement of the members, inter se, and not with the national council, was that they were not to be altered except on the approval by the national council's committee on law of the changes proposed. The plain effect of these and similar provisions, in the constitution and laws of the state council was to incorporate in them the by-laws of the national council then operative and as subsequently amended in accordance with the then existing provisions therefor. In other words, the constitution and laws of the national council were as much the by-laws of the state council at the time of the incorporation of the latter as were what are termed its own constitution and laws; and, continued in binding effect by the Act of March 1, 1870, they govern that corporation to-day. This does not result from any contract between the two bodies but from the membership compact between those who united to form the state council, the obligations imposed by which have been assumed by their successors.

It is argued that the effect of this view (in which, it may be observed, all parties concurred for forty years) is to leave the state council of Pennsylvania in a condition of subordination to the national council and to interfere with its independence as a separate and distinct legal entity. This, in a sense, we think must be granted; but that is exactly what the Act of 1870 indicates plainly as the intent of the legislature.

The phraseology of that act is peculiar. Most acts of incorporation purport to erect into a corporation certain persons specified by name and such as may become associated with them. The Act of March 1, 1870, does not do so. It makes a corporation out of a class of persons. To ascertain who the corporators are, reference must be made to the records of an unincorporated society. Section 1 enacts that the members of the state council of the Junior Order of the United American Mechanics and such other persons, whether minors or

adults, as may hereafter become members thereof, are hereby created a body politic and corporate. The object in this was not to sever the relations of the state council with the rest of the order but for certain purposes, to give it legal personality. In other words, the state council was left just as it was before incorporation except that it was endowed with corporate powers.

That the new corporation was intended to stand not independent and alone but in a relation of some kind to the Junior Order of United American Mechanics appears from the wording of three other clauses of the act. By Section 2 members of the corporation are granted power to take, purchase, hold and receive lands, money, etc., to them and their successors—not to their own use, but—"for the use of said association." Section 3 gives them power to make such by-laws, rules and regulations as shall be necessary for their government and the "promotion of the principles of said association." In Section 5, as stated above, it is provided that the by-laws of the state council then in force should be good and valid until altered, amended or abrogated, and by these the relation of the state council to the order at large plainly appears.

We have no doubt, therefore, that when full effect is accorded to the terms of the fundamental contract between the members of the corporation known as the state council of Pennsylvania, the intention of the legislature as evinced by the Act of March 1, 1870, is not violated, and no reason has been pointed out to us why every term of the contract of membership in this corporation should not be enforced on the application of any of its members.

It follows, logically, we think, that the relators have the right to ask the court in determining what are the rules affecting their status, to refer to the constitution and laws of the national council and enforce them, not as the by-laws of another corporation, but as part of the by-laws of the state council itself.

Vol. ccxli—25

When this is done we find that one of the terms under which the members of the state council are associated consists of a provision for the arbitration by the national judiciary of just such disputes as that here presented; and under this view of the matter, the same effect must be accorded to the decision of that tribunal as it has been above demonstrated it would have been entitled to if the state council had not been incorporated.

Whether the questions who were legally elected officers of the state council on September 21, 1910, and which of the two meetings then held at Erie was the lawful session of the state council are to be treated as questions affecting the Junior Order of United American Mechanics at large, or more narrowly, as questions limited in their effect to the state council alone, the result is the same. They must be decided by the national judiciary either as involving a dispute in the order itself, or as presenting a controversy in an organization separate and distinct from the Junior Order of United American Mechanics, the settlement of which has been referred to the tribunal of that order as expert in such matters, by an agreement of arbitration entered into by all parties in interest. Having taken cognizance of these questions, the national judiciary, after giving both sides a fair chance to be heard, has regularly proceeded to decide them; and its judgment is conclusive on the parties before this court. The matter is now res adjudicata.

But, say the respondents, the national council as a corporation has no power to deprive us of offices in another corporation. This may be granted. It has no such power, and it has not attempted to exercise it. The respondents have lost their title to the contested offices, under the by-laws of the state council itself, through the decision of referees appointed thereby to investigate and adjudicate their rights.

Much importance is attached by counsel for the respondents to the fact that, at one of the rival meetings of

the members of the state council at Erie, it was resolved to sever whatever contractual relations existed between that body and the national council, this step being taken before the question as to the right to hold the offices in the state council was laid before the national judiciary. We do not regard this fact as having the slightest bearing on the disposition of the case. If the meeting at which the resolution was adopted was not a lawful session of the state council the resolution was, of course, a nullity. But it is without effect on this case even if adopted at a legal meeting of the corporation, because, in the first place, it purports to affect only the contract between the two corporations, and not the contract between the members of the state council, and, therefore, did not disturb rights and obligations under its by-laws; and, in the second place, because if the resolution be construed as an attempt to abrogate the right of the members to have such questions as those here presented adjudicated by the national judiciary as arbitrator, it is necessarily implied that it is an amendment of the state council's by-laws, and these could be altered only by a particular method of procedure to comply with which no attempt was made.

Judgment of ouster was thereupon entered in favor of the relators with costs. Respondents appealed.

*Error assigned,* among others, was the judgment of the court.

*Alexander M. DeHaven* and *W. U. Hensel,* with them *Alex. Simpson, Jr.,* for appellants.

*W. A. Stone,* with him *F. J. Shoyer, F. L. Clark,* and *A. D. Wilkin,* for appellees.

Opinion by Mr. Justice Elkin, June 27, 1913:
The historical view of the origin and growth of the

Junior Order of United American Mechanics will be helpful to a proper understanding of the questions raised by this appeal. This order was first instituted by the organization of Washington Council, in Germantown, Pennsylvania, in 1853. It is a voluntary, secret, patriotic and beneficial society. In the plan of organization it was provided that the original council should act as a state council until six such councils were organized, and it did so act until eight councils were instituted. In 1860 these eight councils formed what was called a state council which at that time acted as the governing head of the order. As the order grew new councils were established from time to time not only in Pennsylvania but in adjoining states, notably in Delaware and New Jersey. The State Council of Delaware was organized in 1868, and of New Jersey in 1869. These state councils were instituted by virtue of warrants or charters granted by the State Council of Pennsylvania. For reasons which do not appear in this record but evidently deemed wise by the members of the order at that time, and no doubt because the order had outgrown state limitations, a National Council was organized in 1869 by duly elected representatives of the order in different states. The organization of the National Council was a voluntary act on the part of the entire membership of the order whose representatives were elected for this express purpose. The intention was to create a supreme governing head of the order as the most effective means of promoting its growth and extending its influence. After the National Council had been created in the manner stated a constitution and by-laws were adopted and proper officers elected. From 1869 until the present time the National Council has directed the affairs of the order and has been recognized, except in a few instances in later years, one of them being by the appellants in this case, as the supreme authority of the organization. In the constitution and by-laws it is provided that the National Council shall be

the supreme head of the order with power to make rules of discipline and general laws for the observance and government of the entire order. For more than forty years it has exercised these powers and has directed the affairs of the order according to the plan of organization which provided for (1) a National Council; (2) state councils working under charters or warrants legally granted and not suspended or revoked; and (3) councils holding charters or warrants duly granted and not suspended or revoked. While this was the plan adopted by the national council, it must be regarded as the plan of the whole organization, because the entire membership of the order commissioned their representatives to formulate and adopt such a plan, and it has been accepted as the law of the order for more than forty years. It will thus be seen that the National Council as the supreme head of the order exercises general supervision and jurisdiction in all the states, territories and countries in which branches of the order are established; the state councils while acting under the national council have jurisdiction in their respective states within certain limitations; and the councils or branches which are created by the state council are subordinate to both the state and national councils. In other words, the national council, state councils and subordinate councils are but component parts of the plan adopted by the members for the promotion of the best interests of the order. They are not separate and distinct parts acting independently of each other, but were intended to form a harmonious, orderly system for the transaction of the business of the order and the promotion of those principles for which it was organized. It is doubtful if anyone would have asserted a different view if the order in its various parts had remained as an unincorporated association of members. But it did not so remain and this is what gave rise to the present controversy. In 1870 the State Council of Pennsylvania was incorporated by an act of the legislature, and the appellants

contend that they are acting under their charter powers and are not bound by the constitution and by-laws of the National Council. In order that the act of incorporation should be properly construed it is necessary to keep in mind the situation of the state council at that time and the purpose for which the charter was granted. The state council was in existence as an unincorporated society at the time the Act of 1870 was passed. Indeed, the purpose of the act is declared to be the creation of the members of the state council into a body politic and corporate for the "promotion of the principles of said association." The act did not create a new society, nor was it the foundation of a new organization. It simply gave corporate form to an unincorporated branch of a society already in existence. It was not intended to create a new society with a purpose different from that of the old order, but, on the other hand, the manifest intention was to preserve the old order, and to make the incorporated branch an integral part of it. This is not a new view, nor one adopted for the first time to meet the contingencies of the present case, but it was the view accepted and acted upon by the national council, state council and members of the order from the time the act was passed in 1870 until the difficulties arose which gave rise to the present controversy. The contention now made that the state council can secede and act independently of the national council, and without reference to the constitution and laws of the supreme body does not appeal to us as sound. We find nothing in the Act of 1870, properly construed, to warrant such action. It was provided in that act that the officers of the unincorporated society should continue in their respective stations until successors were elected and that the rules and by-laws in force should remain good and valid until altered, amended or abrogated. The general objects of the unincorporated society were written into the act as the declaration of purpose for which the charter was granted. There cannot be the slightest

doubt that the legislative intent was to give corporate form to a society already in existence for the purpose of better promoting the principles of the order. There is no indication of a different intent. That the officers and members of the state council so understood the act is shown by a resolution adopted in 1883 instructing the board of officers to have the objects named in the charter amended so as to conform with those adopted by the national council in 1882. In obedience to these instructions the officers of the state council presented a petition to court asking that certain amendments and alterations be made to said charter, and the prayers of this petition were granted and the amendments allowed. All this was done in order that the state council as an incorporated body might act more completely in harmony with the national council, and the charter as amended shows conclusively that the state council intended after its incorporation to act as an integral part of the national organization and acknowledged obedience to the constitution and laws of the supreme head of the order. In this respect the charter powers of the state council are somewhat analogous to those corporations which are created for the express purpose of carrying out the provisions of a will. While the state creates the corporation and grants the charter, the provisions of the will prevail and the corporation must be conducted in such manner as to effectuate the intention of the testator. Again, the Act of 1870 gave the corporation the power to "make such by-laws, rules and regulations as shall be necessary for their government, and the promotion of the principles of said association." Acting upon this authority the state council did adopt a constitution and by-laws which subordinated it to the national council and expressly recognized the national council as the supreme governing head of the order. In addition, the state council accepted the constitution and laws of the national council as binding upon it, and for a long period of years never questioned that authority.

That the national council represents the supreme power of the order and that its constitution and laws are binding upon all state and subordinate councils as well as upon the entire membership of the organization was distinctly ruled in Derry Council v. State Council, 197 Pa. 413, wherein this court, speaking through our Brother Brown, said: "An examination of the constitution and national laws for the government of the Junior Order of the United American Mechanics adopted in Minneapolis in June, 1899, the adoption of which we have held to be valid and binding on the order, shows that the body which adopted it was the supreme governing power and that the national constitution and laws are the supreme law." The effect of that decision was to make the national constitution and laws binding upon all state councils, subordinate councils and the entire membership of the order. By adopting this plan of government and accepting the supreme law of the order as binding upon it, the state council in legal effect wrote the constitution and laws of the national body into the constitution and laws of the state organization, as it had the right to do under the charter powers granted by the Act of 1870. It necessarily follows, therefore, that even if the state council be regarded as acting under its charter powers alone, it became an integral part of the national body by its own corporate act. To adopt any different view would be to disregard the historic growth and development of the order as well as the primary purposes for which the charters to the state and national councils were granted. All of this is but preliminary to saying that the National Judiciary represented the supreme power of the order in dealing with the questions involved in the present controversy, and this tribunal having taken jurisdiction of the matters in dispute between the parties to this proceeding, and having decided that the relators had been properly and regularly elected to their respective offices under the constitution and laws of the order, and **no**

fraud or collusion having been charged or proved against the National Judiciary in hearing and deciding the matters in dispute, its action was final and conclusive under the facts of the case at bar as the learned court below has found. We cannot agree with the learned counsel for appellants that the National Judiciary had no jurisdiction of the subject matter of this controversy. Under the powers vested in the National Judiciary there is ample authority to sustain the jurisdiction exercised by that tribunal in the present case, and upon this question we adopt the reasons given by the learned court below in disposing of the case. With this view of the law nothing of profit can be added to the discussion. Indeed, the case might well be rested on the very excellent opinion of the learned judge who heard it in the court below. We approve of what was said in that opinion on all the material questions in the case, and have simply added a general review of the whole situation by way of emphasis. That a schism of such disastrous consequences to the order has been occasioned by officers and members holding different views as to their legal rights, no matter how good their intentions, must be a matter of regret to both factions, if they are interested in the promotion of the principles of the organization. If the order is to live, it must be as a national body, and if segregated into various parts, acting independently of each other and acknowledging no supreme authority to govern the entire body, it will soon wither and die by the sure process of disintegration. Common prudence suggests that the contending factions should settle their differences and work together as one harmonious body of national scope and character. But this is the work of the officers and members and not of the courts.

Judgment affirmed.