## Smyers' Estate

*N. F. Womer,* for exceptant.
*Bell & Brockbank,* contra.

SMITH, P. J., April 11, 1935.—This matter arises upon exceptions to the schedule of distribution in the auditor's report in the estate of George W. Smyers. The controversy is as to the ownership of a fund admittedly held by the decedent as trustee. The decedent was a member of a lodge known as the Harry Goode Lodge No. 307 of the Ancient Accepted Scottish Rite Universal Freemasonry, from which he received the funds in question which were deposited in the Du Bois National Bank in the name of George W. Smyers, trustee. The funds are claimed by the Regional Grand Lodge of North America, Ancient Accepted Scottish Rite, Universal Freemasonry, claiming to be the parent organization, and also by Walter Clark, Edward Divins and Walter McHenry who, acting for themselves and other former members of the local lodge, claim the funds for such former local members. The auditor found in favor of the Regional Grand Lodge.

From the auditor's findings it appears that this lodge was instituted at Du Bois on June 13, 1908, under the jurisdiction of the Region 1 Grand Lodge of the United States of North America, constituted in the federation of the Grand Spanish Orient of Madrid, Spain. It continued to function as a lodge until June 28, 1923, when, its members having apparently lost interest and having gradually dwindled, it ceased to meet and carry on its usual activities. No formal revocation or suspension of its charter appears to have been made, nor did the lodge by any formal action dissolve or surrender its charter.

The funds in question arose from two sources, the one being a stipulated amount of dues, 50 cents per month for each member, and the other being voluntary contributions of no fixed amount which were obtained by collections taken at bimonthly meetings. The funds collected by the latter method were designated as a widows' and orphans' fund. All of these funds were originally deposited after meetings in the common funds of the lodge, but from time to time by lodge action certain amounts of these funds were withdrawn from the general funds and directed to be placed in certificates of deposit. From the auditor's careful examination of the records he finds that on September 28, 1910, $100 was so placed, on December 10, 1914, another $100. On December 10, 1914, likewise by lodge action, $100 was put in the form of a certificate of deposit in the general fund, and on March 12, 1918, the trustees placed another $100 from the general fund in such certificate. As time passed and these certificates were renewed the interest was added to the new certificates substituted for them, so that at the time of the audit there was on hand from the original $200 set aside as widows' and orphans' funds a total sum of $388.77, all of which has been traced by the auditor to that original investment. The amount of the two certificates with accruals in the general fund, likewise traced by the auditor, is $239.34. In addition to this there was found to be $41.91 due from the decedent's estate for amounts drawn, so that the total in the general fund amounted to $281.25. After the lodge ceased to be active these funds remained in the possession of George W. Smyers, the decedent, who has had possession of the various lodge properties and paraphernalia and retained both the funds and property until his death on September 19, 1933. The decedent apparently made no claim of ownership but recognized that he was holding these properties and funds as trustee for the parties who were properly entitled, the bank deposits being carried in the same

form as prior to the dissolution. No demand appears to have been made by anyone for them until after his death.

The exceptants contend that the Regional Grand Lodge has not shown a proper relationship as a parent lodge, and for that reason is not entitled to recover any of the funds. This contention is based upon the fact that as originally instituted the lodge was under the jurisdiction of the Regional Grand Lodge of North America, A.A.S.R. Universal Freemasonry, constituted in the federation of the Grand Spanish Orient; that about 1920 the connection with the Spanish Orient was broken; that thereafter for a time the Regional Grand Lodge was associated with a similar orient in France, with which connection was later broken; and that thereafter and at the present time the Regional Grand Lodge now claiming the funds has been operating as an independent organization in the State of Pennsylvania and without any superior body.

Under the Act of June 20, 1883, P. L. 132, it is provided that "the funds and effects of unincorporated associations for benevolent, charitable or beneficial purposes, constituted or organized under any warrant or charter granted by any association recognized or acknowledged as the parent or superior body, where the rules and regulations of such parent or superior body require that, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by such parent or superior body . . . are hereby declared to be trust property", and the act further goes on to prohibit distribution among the local membership and to provide for the delivery of such funds and effects to the parent body to be held by it "for the purposes and intents for which they were received and held by such subordinate associations". The constitution of the Regional Grand Lodge expressly contained the following provision: "In all cases where a Subordinate Lodge is suspended, dissolved, or its charter revoked for any cause whatever, it shall be the duty of the last Vener-

able Master and the officers immediately to deliver up to the Grand Master or his deputy all funds and effects."

In his careful and detailed report dealing with the various contentions of the parties, the auditor properly points out that it is the parent body "recognized or acknowledged" which is entitled to receive such funds and effects. He also points out that the only grand lodge which the Harry Goode Lodge ever knew was the same Regional Grand Lodge now claiming the funds, and that the subordinate lodge at no time had any direct relations with either the Spanish Orient or the French Orient. The bylaws of the subordinate lodge and the constitution of the Regional Grand Lodge fully support this view. We concur entirely in the auditor's view that the relations between the Regional Grand Lodge and any superior lodge whose jurisdiction it may have acknowledged is immaterial and irrelevant to this controversy, as the only relationship of parent and subordinate lodge shown to have existed at any time was that between the Regional Grand Lodge and the subordinate one. This disposes of the controversy so far as it concerns the general lodge property and funds: that is, under the Act of 1883 such property upon dissolution of the subordinate lodge, either by formal action of the Grand Lodge itself or simply by inactivity on the part of the membership, as apparently occurred here, should be paid and delivered to the Grand Lodge: Grand Castle, Knights of Golden Eagle, v. Taylor et al., 278 Pa. 9.

Objection is made to the auditor having examined the funds to determine what part arose from dues and what part arose from contributions to the widows' and orphans' fund, it being contended that neither party to the controversy asked for such a determination, each claiming the entire fund. We think, however, that the auditor followed the proper course in this, and that it was his duty to determine, so far as could be done, from which of these sources the various parts of the fund arose. Hav-

ing carefully done so, his findings should be accepted and no exception is taken to the division made by him so far as the amount thereof is concerned. While the funds were apparently mingled to some extent at the outset in the common bank account of the lodge, nevertheless the lodge later from time to time recognized and earmarked certain parts of the funds as belonging to the widows' and orphans' fund. These funds quite clearly, therefore, are not a part of the general funds of the lodge, and in view of our interpretation of the law as hereinafter set forth, are impressed with a trust which does not apply to the general lodge funds.

The subject of the application of the Act of 1883 has been before the courts of the State on a number of occasions, and from these there have arisen two lines of decisions which, although offering some difficulties in reconcilement, are not in conflict but apply according as different sets of facts appear. In State Council Junior Order of United American Mechanics of Pa. v. Emery, 219 Pa. 461, it was held that the Act of 1883 did not require that a fund raised entirely for local beneficial purposes should be paid to the parent organization under the facts in that case. On the other hand, the case of Grand Castle, Knights of Golden Eagle, v. Taylor et al., 278 Pa. 9, held that the funds in that case, even though collected for local beneficial purposes, should be paid to the parent organization to be held for the same beneficial purposes. The opinion in the last-cited case points out some of the differences between these two cases which explain their apparent conflict. Aside from other differences clearly appearing on examination of these cases, it will be seen that the parent organization in the Knights of the Golden Eagle case clearly recognized the trust purposes for which it must hold the funds awarded to it, and agreed in advance, as pointed out by the Supreme Court, that the decree should protect such trust purposes, and in fact already had the established machinery for such protec-

tion, in its organization in the form of a Castle of Protection, which would take charge of the funds and with which the former members of the subordinate lodge could become affiliated and obtain its benefits. It thus appears clearly that not only was there an established organization for carrying out the trust purposes involved and thus fulfilling the requirements of the Act of 1883 in that respect, but that the carrying on of such beneficial purposes was a part of the parent as well as the subordinate organization's general purpose. In deducing the rule from these two cases as well as other cases, such as Commonwealth, ex rel., v. Heilman, 241 Pa. 374, Wolfe v. Limestone Council No. 373, 233 Pa. 357, Great Council of Pa., etc., v. Wingohocking Tribe No. 33, etc., 14 D. & C. 719, and others, we think the proper rule is that where the funds are entirely local in their character, and not covered in the constitution and bylaws of the parent organization, and are not included in its general aims and purposes, the Act of 1883 has no application and the funds belong to the membership of the local lodge, as in the case of State Council Junior Order of United American Mechanics of Pa. v. Emery, above cited, under the trust for which collected; and that the Act of 1883 does apply as to the general property and effects of a subordinate lodge, or even to local funds which are collected for purposes included within the general aims, purposes and direction of the parent organization.

If we apply the rule as we deduce it to the case at hand, we think it is quite clear that the Regional Grand Lodge has no right to the funds known as the widows' and orphans' fund. Neither its constitution nor bylaws, nor the bylaws of the subordinate lodge show that the collection and administration of such a fund is included in the purposes of the organization generally, nor is there any testimony to show that the Grand Lodge in fact undertook to effect any such purpose. There is no organization set up for the administration of such funds as might re-

vert to the Grand Lodge as there was in Grand Castle, Knights of Golden Eagle, v. Taylor et al., supra. No assurance is offered that the trust purposes for which the fund was collected will be respected. It would seem idle to say that the parties have a remedy in equity, which would mean in practical effect that they would have to follow this small fund with another proceeding in equity to compel the Grand Lodge after obtaining it properly to administer it. The purposes of this fund do not appear to have been expressly stated nor a definite form of organization for its administration to have been adopted, but it seems entirely clear that it was intended for the relief of the widows and orphans of its deceased members. In the opinion of the court, therefore, this part of the fund belongs beneficially to the local membership of the lodge for administration properly to accomplish such purposes.

The Regional Grand Lodge contends that the local claimants have shown no right or standing to claim the fund as trustees, and the auditor so found. We agree with the auditor's conclusion that the authority of the claimants is not fully established by the testimony. They were appointed by I. I. Johnson, who was one of the members at the time of dissolution, but who does not appear to have been one of the last board of trustees nor otherwise to have had authority to make such appointment, at a meeting held by some of the former members. We are unable to agree with the auditor in applying the test whether or not the claimants continued to be in good standing as members of the lodge subsequent to the dissolution on June 28, 1923, as it is obvious that, there being no lodge in existence, the members had no way of complying with the duties of members of a regularly existing lodge. In our view, as the disintegration of the lodge was a gradual process rather than one occurring at any specific time, the proper test as to whether or not a former member was entitled to the benefits of this fund would be whether he remained in good standing up to a

date which was within such reasonable period prior to its final demise as may fairly be said to cover the period of final disintegration. While not called upon at this time finally to determine what such reasonable period would be, as to which our judgment might be altered by additional facts, if available, for the guidance of the parties interested, we here express the opinion that such period should be 1 year, that is, that the benefits of the fund belong to those members who remained in good standing up to within a year prior to June 28, 1923. This we regard as one of those matters which should be determined by equitable principles, and it would seem inequitable that where a lodge ceased to exist by the gradual process of disintegration, those members who remained at the final dissolution or within 2 or 3 months prior thereto should have a preference over other members who remained such so long as the organization remained efficiently active but not until a date so close to its actual demise.

It is well established that the orphans' court within the scope of its own jurisdiction has the powers of a court of equity: Carney v. Merchants' Union Trust Co., 252 Pa. 381; Lamparter's Estate, 15 D. & C. 369; Nimlet's Estate, 299 Pa. 359. It is also well established that irrespective of any statutory provisions, the orphans' court may require security from distributees and others when there are possible interests to be protected: Duval's Appeal, 38 Pa. 112; Palmer's Estate, 16 Phila. 261; Pierson's Estate, 5 Dist. R. 424. It would seem to follow, therefore, that in view of our opinion that the ownership of the widows' and orphans' fund here belongs to the class of members we have indicated above, this court should retain the fund within its control until those persons have designated trustees to whom the fund may be awarded with confidence that it will be devoted to the purposes intended. To do this we think the present claimants should make an effort to determine who are the parties

so entitled to share in the benefits, call a meeting of them after due notice, and either have themselves or some other board of trustees elected for the purpose of receiving this fund and applying it to the trust purposes; and they should also adopt some sort of regulations or organization, not necessarily elaborate in form but of a character ample to effect the purposes of the trust fund. To accomplish this and yet not delay the distribution of the estate, the fund in question should, in our opinion, be paid to the clerk of the orphans' court, to be held by him pending a further order to be made by this court directing payment to trustees who may be established in accordance herewith.

The question is also raised by the exceptants that the distribution of the costs of the audit between the decedent's estate and this fund was unfair to the claimants to the fund. The total costs of the audit amounted to $299.65, of which the auditor charged $79.95 against the Smyers estate and the balance equally, $109.85 each, against the general lodge fund and the widows' and orphans' fund. Examination of the testimony and report of the auditor shows that the questions involved in the general distribution of the estate required comparatively little of the auditor's time and attention, and that the great bulk of the work and attention was required by the controversy over the lodge funds. In our opinion, therefore, the distribution of the costs is not improper.

The exceptants have taken exception to various of the findings of fact as well as of law. Examination of the testimony, however, fully sustains the auditor's findings of fact, and as in all except a few instances the exceptions to such findings are general rather than specific, such exceptions cannot be sustained. The various exceptions as to matters of law are fully disposed of by the conclusions we have reached heretofore in this opinion.

Now, April 11, 1935, in accordance with opinion herewith filed, the auditor's report and schedule of distribu-

tion is hereby approved and confirmed except that the award of the balance of the fund designated the W. & O. fund awarded to the Regional Grand Lodge is hereby set aside, and said amount, $278.92, is hereby awarded to trustees for the persons entitled to receive the same in accordance with the foregoing opinion, the same to be paid to the clerk of the orphans' court and to be held by him until further order of court shall be made directing the payment thereof to such persons as shall appear to the court to be properly constituted trustees for the administration of the widows' and orphans' fund of the Harry Goode Lodge No. 307, of the Ancient Accepted Scottish Rite, Universal Freemasonry.

The exceptions, except so far as the same are sustained by the modification herein contained, are hereby dismissed.

The costs of this proceeding subsequent to the audit shall be paid and deducted from the award to the Regional Grand Lodge of North America, Ancient Accepted Scottish Rite, Universal Freemasonry.

From John M. Urey, Clearfield.